WILLIAM T. GILROY et al.

*v.*

SOMERVILLE WOOLEN MILLS et al.

[Filed July 18, 1904.]

After a corporation makes a general assignment for the benefit of its creditors, it may be adjudged insolvent, a receiver appointed, the assignee removed and all further proceedings with regard to such insolvency conducted under the jurisdiction of the court of chancery.

On rule to show cause why a receiver should not be appointed.

*Mr. Edward P. Johnson,* for the complainants.

*Mr. James L. Griggs,* for the defendants.

BERGEN, V. C.

The bill of complaint, after setting forth the incorporation of the defendant company under the laws of this state, the amount of its capital stock and the fact that the complainants are stockholders, charges that, on April 21st, 1904, the defendant corporation, by the act of its directors, and without consultation with or notice to its stockholders, executed and delivered to the defendant James L. Griggs a deed of assignment for the equal benefit of its creditors under and by virtue of "An act concern-

ing general assignments (Revision of 1899)." That immedi-
ately thereafter the assignee took possession of the property
and assets of the company, and has since then, to a limited
degree, carried on the manufacture of goods of the same char-
acter as had been previously manufactured by the corporation;
that the assignee, at the time of the assignment, and for ten years
previous thereto, had been a member of the board of directors
and the counsel of the corporation; that the business carried on
by the corporation had not been profitable for a number of years
past, and that no dividends had been paid on any of its capital
stock since the year 1900, and that at the present time the
liabilities of the corporation far exceed the value of its assets.

The complainants further charge that certain dividends, de-
clared and paid by the board of directors previous to the year
1900, were not distributed from profits made by the company,
but that the capital of the corporation was drawn upon to make
such payments; that the assignee, being one of the persons under
whose management the corporation has become insolvent, re-
sulting in a total loss of a cash capital investment of $400,000
within a very few years, is not a proper person to be continued
in such management and control, nor is it to be expected that he
would, if as an assignee he had the lawful right so to do, compel
restitution from himself and his co-directors of the amount
unlawfully paid out in dividends. They further insist that
the assignee, in continuing the business, is conducting the same
at a loss.

The answer does not attempt to set forth in detail the amount
of the indebtedness of the corporation, but admits that the same,
as set forth in the complainants' bill, is "substantially correct."
The affidavits attached to the answer show that on April 16th,
1904, the corporation discontinued its business, and at a meeting
of the directors of the corporation, at which all of the direc-
tors were present, a resolution was adopted which recited, among
other things, that the credit of the company had become so im-
paired that they could neither purchase raw material nor sell
manufactured products on the usual terms, nor borrow suffi-
cient money to meet their needs as working capital, and that it

was impossible to provide for all of their past-due and maturing indebtedness, and in the hope that all claims against the company might be fully discharged if an assignment for the equal benefit of the creditors. of the company should be made, did thereupon authorize the president and secretary to execute such deed of general assignment.

On the argument the insolvency of the company was not seriously disputed. The answer filed in general terms denied insolvency, but it is entirely clear to me that the affairs of the corporation are in such condition that the appointment of a receiver is not only justified but that the best interest of the creditors and stockholders require such a course to be taken, and that the condition of insolvency contemplated by the statute exists.

The defendants, in resisting this application, rely upon the law of this state (*P. L. of 1899 p. 146 § 24*), which authorizes any corporation organized under the laws of this state to make a general assignment for the benefit of its creditors and confers upon the orphans court of the county where such corporation may be located jurisdiction of the proceedings. The same section, however, provides that if any such corporation shall at any time after such assignment be adjudged insolvent and a receiver thereof be appointed by the court of chancery of this state, such assignee may be removed and all further proceedings with regard to such insolvency conducted under the jurisdiction of the court of chancery. Previous to the enactment of this law all proceedings relating to the closing out of insolvent corporations were committed exclusively to this court, and the exercise of a concurrent jurisdiction by the orphans court ought not to be extended beyond the point intended by the legislature, as manifested by the words of the act. It certainly contemplated that in cases of insolvency, and for good reason shown, this court would exercise its jurisdictional power and appoint a receiver, and it was very careful in the section under consideration to make the right of a corporation to execute a general assignment subject to the right of this court to exercise its statutory functions in the matter of insolvent corporations. Cases may arise

31

where such a general assignment would be wise and judicious, and every application for the appointment of a receiver and the removal of an assignee must be determined by the particular facts and circumstances surrounding each case.

Whether the General Assignment act, as it now stands, can ever be successfully invoked by a corporation, where it appears that the corporation is insolvent, it is not necessary that I should now determine. A general assignment may be made, and frequently is made, when the assignor is not insolvent, but where a corporation is insolvent its affairs ought to be administered and the corporation dissolved in the court of chancery, where every right and remedy prescribed by the General Corporation act, and from which every corporation derives its existence, can be most efficiently protected and afforded, and the wise rule that the management of the trust, growing out of insolvency, will not ordinarily be committed to the persons responsible for the misfortunes of the corporation will be enforced.

This salutary rule would always be abrogated if the management of a corporation, having brought it to the verge of insolvency, could perpetuate their control by the simple method of assigning the property of the corporation to one of their own number.

It seems to me that if in any case where an assignment has been made this court should interfere and appoint a receiver, it should do so here. Since the year 1900 it is admitted that no dividends have been earned; in other words, the business has been run at a loss, and apparently the whole capital stock of $400,000 dissipated under the present management. On the eve of bankruptcy, with creditors pressing on all sides, and confessing their inability to further continue the business, these directors meet and, without calling together the stockholders, they direct the officers of the corporation to make a general assignment to one of their own number in direct violation of the spirit of the sixty-third section of the General Corporation act, which requires the directors, within ten days after insolvency, to call a meeting of the stockholders and lay before them for

inspection and examination all the books of accounts and to exhibit a true statement of its property and of all debts owing by it.

The Corporation act makes the directors of a corporation jointly and severally liable to the corporation and to its creditors for any. dividends paid, except from the surplus or net profits. As this assignee was one of the directors charged with paying dividends in violation of the statute, he should not be retained in a position requiring him to enforce any such violation.

In my opinion the usual injunction order should be allowed in this case, and a receiver or receivers appointed, and the assignee removed, and directed to transfer and convey the trust estate to the receiver, and I will so advise.