IN THE MATTER OF THE GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF ARTHUR SHAY, INDIVIDUALLY AND T/A MICHAEL SHAY TOYS, ASSIGNOR, TO DAVID E. FELDMAN, ASSIGNEE.

DAVID E. FELDMAN AND KLEINBERG, MORONEY & MASTERSON, APPELLANTS, v. SCHRANZ & BIEBER CO., INC., RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 8, 1962—Decided July 6, 1962.

422

Before Judges CONFORD, GAULKIN and KILKENNY.

*Mr. James E. Masterson* argued the cause for appellants (*Messrs. Kleinberg, Moroney & Masterson,* attorneys for assignee).

*Mr. Ralph Neibart* argued the cause for respondent.

The opinion of the court was delivered by

KILKENNY, J. A. D.   The Somerset County Court allowed the assignee, David E. Feldman, $1,767.65 "as commissions," $1,317.81 "as his disbursements," and $6.80 for his out-of-pocket expenses, and denied the application of Kleinberg, Moroney & Masterson (hereinafter called the attorneys) for a fee as attorneys for the assignee. The assignee appeals, contending he should have been allowed more. The attorneys appeal contending they should have been allowed a fee. The assignee also appeals from the award of a $400 counsel fee to Ralph Neibart, attorney for the objecting creditor.

I.

The trial court properly denied the application of the attorneys for the assignee for a counsel fee. They had not been engaged by the assignee upon an order of the court, as required by *R. R.* 4:69 and *R. R.* 4:68–4. Furthermore, there was no real need for the engagement of attorneys for the assignee in this case. The assignee is a member of the bar experienced in this type of proceeding and could have performed all of the services rendered by his attorneys. There was no litigation of any kind, and the only allegedly legal work involved herein consisted in the ordering of some lien searches, an examination of the respective interests of the assignor and his wife in a business, and the examination of the assignor under oath. All of these matters were within the easy competence of an attorney trained in insolvency matters, such as the assignee herein. *In re Xaviers, Inc.,*

66 *N. J. Super.* 561 (*App. Div.* 1961), is dispositive of this issue.

## II.

The award of a $400 counsel fee to Ralph Neibart, attorney for the objecting creditor, Schranz & Bieber Co., Inc., was proper. Mr. Neibart, on behalf of this creditor, whose claim represented 35% of all the claims of creditors, had filed exceptions to the applications of the assignee and his attorneys for commissions and counsel fees, and to the disbursements made by the assignee as shown in his accounting. The assignee asked for commissions in the sum of $3,100—approximately 20% of the gross receipts—and in addition thereto prayed allowance for disbursements made by him for his bond premium, legal advertisements, transcripts of testimony, appraisal fees and auctioneer's fees, and other expenses in the total sum of $1,317.81. His attorneys asked for a counsel fee of $2,500. As the result of the exceptions filed on behalf of his client by Mr. Neibart and the hearing thereon, the application for counsel fees in favor of the attorneys for the assignee was denied and the claim for commissions was reduced from $3,100 to $1,767.65. Thus, the attorney for the objecting creditor performed services which resulted in a saving to the estate of $3,832.35. Since the attorney's objections to the commissions, counsel fees and disbursements operated materially to the benefit of the estate and the ultimate benefit of the creditors generally, he was entitled to the reasonable counsel fee awarded to him by the trial court. *In re Broad Street National Bank of Trenton,* 37 *N. J. Super.* 171 (*App. Div.* 1955); 7 *N. J. Practice Series (Clapp, Wills and Administration)* (3d ed. 1962), § 1545, *p.* 258 and § 1546, *p.* 263.

The assignee raises the technical objection that the award of a counsel fee to Mr. Neibart was erroneous because he had not served any prior notice on the creditors of his intention to apply therefor. We find no substantial merit in this contention. Any creditor given notice of an ap-

plication for the approval of an account and for fees and commissions is on constructive notice that any one of the other creditors might file exceptions and, if the exceptions are sustained to the benefit of the estate, that the attorney for the exceptant may be allowed a counsel fee. Under the circumstances, we conclude that the award of this reasonable counsel fee for the valuable services rendered for the benefit of all the creditors by the attorney for the objecting creditor was proper.

### III.

We turn now to the award made to the assignee. His gross receipts were reported as being $15,461.30 and upon revision were established at $15,505.87. He asked for a commission of $3,100—approximately 20% of the gross as originally reported or revised—and in addition thereto he asked for approval of the following disbursements:

| | |
|---|---:|
| Assignee's bond premium ... . ......... .. | $110.00 |
| Legal advertisement—notice of assignment .... | 47.58 |
| Legal advertisement—notice of sale ........ | 9.18 |
| Advertising notice of sale ....... ........ | 51.77 |
| Transcribing testimony ... ................ | 87.50 |
| Transcribing testimony ......... .... .. .. | 118.75 |
| Overpayment on account receivable ... .. ... | 20.00 |
| Expenses of assignee during administration ... | 47.75 |
| Appraisal fee to Joseph A. Sidoli ....... ... | 100.00 |
| Appraisal fee to Murray Wengliss ........... | 50.00 |
| Auctioneer fee to A. J. Willner .... ........ | 675.28 |
| Total disbursements .. ............. | $1,317.81 |

The trial judge construed our opinion in *In re Xaviers, Inc., supra,* as meaning that he could allow the assignee under *N. J. S.* 2A:19–43 no more than 20% of the gross receipts for his commissions, expenses and disbursements,

no matter what those expenses and disbursements represented. Upon that theory, the trial court figured that 20% of the gross receipts of $15,461.30 amounted to $3,092.26, deducted therefrom the aforesaid disbursements of $1,317.81 and the assignee's out-of-pocket expenses of $6.80, and awarded the net difference of $1,767.65 to the assignee as commissions. *N. J. S.* 2A:19–43 reads as follows:

"Such commissions and allowances shall be made to the assignee or to the personal representatives of a deceased assignee, or to a person who has been removed by the court from his office as assignee for any cause other than his misconduct, on any intermediate or final account, as the court shall consider just, but not in excess of 20% on all sums received by the said assignee, except that this limitation shall be inapplicable where the amount of the estate is less than $500."

The assignee argues that the construction placed on *In re Xaviers, Inc., supra,* by the trial judge was erroneous and that his disbursements aforesaid of $1,317.81 should not have been deducted from the maximum statutory allowance of 20%, *N. J. S.* 2A:19–43, because these disbursements do not constitute "allowances" within the meaning of that statutory provision. He points to the fact that in the case of *In re Xaviers, Inc., supra,* the item therein of $446.51, described therein as "distributions" but which actually represented disbursements for legal advertising, bond premium, appraiser's and auctioneer's fees, was not deducted from the 20%, because not regarded as "allowances" within the act, and he asserts that the disbursements of $1,317.81 in this case were for the same type of expenses. The assignee further asserts that the language of the trial judge indicates that he wanted to give the assignee the full 20% of the gross estate for his commissions, plus his $6.80 out-of-pocket expenses, but felt himself prevented by our decision in the *Xaviers* case. On that reasoning, the assignee asks us to reverse the trial court and allow him 20% of the gross for his commissions and $6.80 out-of-pocket expenses, plus the aforesaid disbursements of $1,317.81.

Our determination in *Xaviers* was that the 20% limitation of the statute, including both "commissions" and "allowances," was confined to "sums awarded directly to the assignee," whether by way of compensation for actual services or reimbursement for out-of-pocket expenditures. It did not include items of expense paid out of the estate for which approval of the court was sought on the accounting. (66 *N. J. Super.*, at *p.* 577.) We recognized in that case that the interpretation of the word "allowances" was difficult and noted that pending legislation, which would have deleted it from *N. J. S.* 2A:19–43, would avoid problems both of interpretation and of undue invasion of the amount reasonably necessary in some cases to compensate the assignee.

Later, in *In re Munson-Lied Co.*, 68 *N. J. Super.* 281, 291 (*App. Div.* 1961), we invited further argument on this point but found it unnecessary to resolve it. We described the problem inherent in the word allowances as "a troublesome one" and recommended the adoption of legislation striking the term "allowances" from the statute.

Curative legislation has not yet been adopted, and so we are confronted again with the question as to what the word "allowances" embraces among the specific disbursements made by the assignee and noted above. Without regard to what we said as to this point in *Xaviers, supra,* we have now concluded upon full deliberation and reconsideration of our opinion in that case that in the instant case the assignee's bond premium and his other expenses during his administration, as well as his disbursements for legal advertisements, advertising the notice of sale, and for transcripts of the testimony, whether advanced by the assignee out of pocket or paid by him out of estate funds, are all embraced within the meaning of the word "allowances" and are to be taken into consideration when calculating the maximum to which the assignee is entitled under *N. J. S.* 2A:19–43. However, we have determined that the appraisal fees of the two appraisers and the auctioneer's fee,

for reasons to be stated hereinafter, are not "allowances" to the assignee within the true meaning of the statute.

As pointed out in *Xavier's, supra,* 66 *N. J. Super.,* at *p.* 575, the phrase "commissions and allowances" in the statute derives from *L.* 1899, *c.* 54, § 19, and has remained intact ever since. It is therefore appropriate, in considering what was meant by the term "allowances," to study the common meaning ascribed thereto, particularly in contrast with the term "commission," in cognate types of administrations of estates of various kinds by fiduciaries. The most pertinent judicial discussion of the subject prior to the adoption of the 1899 act is that found in *State Bank of Elizabeth v. Marsh and Edgar,* 1 *N. J. Eq.* 288 (*Ch.* 1831). As indicated in *Xaviers* (at *pp.* 575, 576) the Chancellor in the *Marsh and Edgar* case expressly distinguished the commissions awarded to trustees for the benefit of creditors for the "trouble and care" in executing the trust, from the "just allowances" for their "charges and expenses" in administration of the estate. No distinction between kinds of charges and expenses is mentioned or implied.

Bearing particularly on the absence of justification for a distinction between out-of-pocket disbursements and payment of expenses of administration out of estate funds is the discussion of the subject in relation to fiduciaries of decedents' estates in 6 *N. J. Practice Series* (*Clapp, Wills and Administration*) (3*d* ed. 1962), § 995, *pp.* 495–497. It is there stated:

"An executor, administrator, guardian or trustee may hire such assistants or servants as are reasonably necessary to carry on the affairs entrusted to him, provided there is no improper delegation of his own duties; subject to this proviso, he will be allowed on his accounting for the charges they make for their services. * * * Elsewhere consideration is given to the employment of counsel. Except where declaratory judgments are sought, the administration of an estate, guardianship or trust is always carried on subject to judicial approval given ex post facto on an accounting; accordingly payments for the services of others are, like other administrational expenditures, made at the fiduciary's peril—that is, subject to the risk of being disallowed on his account."

■ It is thus our present conclusion that, as a general matter, the term "allowances" in *N. J. S.* 2A:19–43 means all expenses incurred by the assignee, whether paid in the first instance out of his pocket or out of estate funds, and whether he seeks reimbursement for advances he has personally made, approval for payment for expenses he has disbursed out of the estate, or approval of obligations or expenses which he has incurred and desires authorization to pay. See *In re Pynn-Hawley Co.,* 63 *N. J. Super.* 50, 54 (*Cty. Ct.* 1960).

From the expenses of administration just referred to, however, we conclude, as noted above, that payment of services of appraisers and auctioneers must be excluded from the statutory category of allowances. These fees, representing as they do compensation paid to these individuals for special services rendered by them, are not included within the meaning of the word "allowances" under *N. J. S.* 2A:19–43. We regard these fees as analogous to fees paid to an attorney or an accountant. As we noted in *Xavier,* 66 *N. J. Super.,* at *p.* 578:

"Counsel fees have in the past been considered, and, by court rule, now must be considered separate and apart from the fiduciary's compensation."

For the reasons which follow, we find that this same principle should apply to compensation approved by the court for services rendered by appraisers and the auctioneer.

While the record before us does not indicate that the appraisers and auctioneer herein were appointed pursuant to order of the court, as they ought to be under *R. R.* 4:69 and *R. R.* 4:68–5(b), those rules put appraisers and auctioneers in the same category as attorneys, accountants and receivers or assignees by requiring each of them to file with the court "an affidavit that he shall not in any form or guise share and that he has not agreed to share *his compensation* with any person or firm * * * without express approval of the court." (Emphasis ours.) There-

fore, compensation paid or approved by order of the court to an appraiser or an auctioneer for services rendered by him is not an "allowance" to the assignee and should not be considered in the 20% statutory maximum provided in *N. J. S.* 2A:19-43.

While the language of the trial court is somewhat uncertain as to whether the assignee would or would not have been allowed more commissions, if it knew that the appraisers' and auctioneer's fees need not be included under the 20% maximum provision, our own examination of the record satisfies us completely that the award of $1,767.65 as commissions to the assignee was ample for all the services rendered by him and his attorneys in the administration of this estate.

Accordingly, the judgment is in all respects affirmed.

GAULKIN, J., concurs in the result.