IN THE MATTER OF THE ASSIGNMENT FOR THE BENE-
FIT OF CREDITORS OF FRANCILLI CARRIERS, INC.,
A NEW JERSEY CORPORATION, ASSIGNOR, TO H. KER-
MIT GREEN, ASSIGNEE.

Superior Court of New Jersey
Chancery Division

Decided October 26, 1962.

*Mr. H. Kermit Green,* assignee.

*Mr. Allan L. Tumarkin,* attorney for assignee.

*Mr. David M. Satz, Jr.,* U. S. Atty. (*Mr. Vincent J. Commisa,* Asst. U. S. Atty., appearing), for United States.

*Mr. Harry Schaffer* and *Mr. Benjamin Tannenbaum,* attorneys for assignor.

PASHMAN, J. S. C. (orally). This is an application by the assignee of Francilli Carriers, Inc. for commissions and allowances and a petition by the assignee's and assignor's respective attorneys for compensation. The main area of dispute between the parties, that is the assignee, the attorney for the assignor and the United States Government as the top priority creditor, is over the meaning to be attributed to the phrase, "All sums received by the said assignee," as it is used in *N. J. S.* 2A:19–43 which deals with the award of commissions and allowances to be made by the court to the assignee.

On December 19, 1961 Francilli Carriers, Inc. assigned its assets to H. Kermit Green who thereafter took possession of the assignor's assets and duly filed a petition to retain counsel. On January 2, 1962 the assignee was authorized to employ Allan L. Tumarkin as his attorney.

Prior to the retention of Mr. Tumarkin, the assignee succeeded in obtaining a very favorable offer from Deb Trucking Corporation for the entire assets belonging to Francilli Carriers, Inc. A modification of the initial offer was subsequently made with court approval and on January 30, 1962, this court ordered that the offer of Deb Trucking be approved

and that the assignee continue the operation of the assignor's business pending final action by the Interstate Commerce Commission on the proposed transfer of Francilli's contract carrier rights to Deb Trucking.

Acting pursuant to the entry of the aforesaid order, the assignee continued the operation of the assignor's business until May 2, 1962. The gross income realized by the assignee during the period of his operation was $76,940.05, and his operating expenses totaled $95,825.47. The net operating loss of $18,885.42 was offset by funds supplied by Deb Trucking under its indemnification agreement with the assignee.

The final accounting filed by the assignee shows total deposits in the amount of $109,166.25 and disbursements of $99,560.43, leaving a balance on hand of $9,605.82. The amounts sought in commissions, allowances and compensation are as follows:

(1) The assignee asks for $3,500 in commissions and $557.56 in disbursements;

(2) The attorney for the assignee seeks $3,500 in fees and $32.06 in disbursements;

(3) The attorney for the assignor seeks $450 for his services.

The United States Government, which holds a priority claim of $13,548.51, disputes the right of the assignee and his counsel to the amount sought and argues that the phrase "All sums received by the said assignee," found in N. J. S. 2A:19-43, refers to the sum or sums received by the assignee at the time the assignor was declared insolvent.

The attorney for the assignor asks the court to discount operating income entirely and consider only the net sums actually coming into the assignee's hands during the administration of the estate. The assignee and his attorney, on the other hand, argue that they are entitled to use the gross operating income as their point of reference in connection with the determination of commissions and allowances.

The statutory basis for commissions and allowances for assignees for the benefit of creditors is found in N. J. S.

2A:19–43. It provides that: "Such commissions and allowances shall be made to the assignee * * * on any intermediate or final account, as the court shall consider just, but not in excess of 20% on all sums received by the said assignee * * *." I have omitted some portions of the statute which do not refer to this case.

No cases have been found by either the court or counsel for the respective parties interpreting the troublesome language (*i. e.* "sums received by the assignee") against the same or a similar factual backdrop as that presented by the case *sub judice.* Reference to normal secondary authorities has also proved fruitless.

Although the courts of this State have not touched upon the precise issue presented in this case, recent decisions pertaining to *N. J. S.* 2A:19–43 have dealt with the apparent inherent defects found in this section. I refer counsel to *In re Kleinberg (In re Pynn-Hawley Co.)*, 63 *N. J. Super.* 50 *(Cty. Ct.* 1960); *In re Xaviers, Inc.*, 66 *N. J. Super.* 561 *(App. Div.* 1961); *In re Munson-Lied Co.*, 68 *N. J. Super.* 281 *(App. Div.* 1961); *In re General Assignment for Benefit of Creditors of Shay*, 75 *N. J. Super.* 421 *(App. Div.* 1962); *In re Trylon Radio Laboratories, Inc.*, 76 *N. J. Super.* 264 *(Cty. Ct.* 1962).

Based upon these decisions, assignees and their counsel have been made aware of the absolute necessity for court approval before fees will be awarded to the assignee's counsel. As to this, counsel are referred to *In re Xaviers, Inc., supra,* which overrules in part *In re Pynn-Hawley Co., supra;* and furthermore that the 20 percent limitation found in *N. J. S.* 2A:19–43 is confined to sums awarded directly to the assignee and does not include items of expense paid out of the estate for which court approval is sought, that is, attorney fees, auctioneer fees and the like. Again, I refer counsel to *Xaviers* and *Shay.* Additionally, attorneys for objecting creditors who perform beneficial services for the assignor's estate are entitled to reasonable compensation. *In re General Assignment for Benefit of Creditors of Shay, supra.*

The argument advanced by the assignee and his counsel that the phrase "All sums received by the assignee" must refer to the gross receipts of the business during the assignee's term of operation is said to be, and I quote from their brief, an "effectuation of the legislative intent that the assignee be given just compensation." The assignee further argues that "the sums received by the assignee are a more accurate guide to the pains, trouble and risk involved in the management of the business than the net amount that would come to his hands for distribution."

While I agree that the sums received by an assignee during the operation of a business, may, in some instances, be indicative of his pains, trouble and risk, it does not inexorably follow that the court should therefore base its award of commissions on this figure. I refer counsel to *Wasmuth-Endicott v. Washington Towers Inc.*, 110 *N. J. Eq.* 1, 7 (*Ch.* 1931). All that does follow is that the court should look to the nature of the business and its attendant problems in deciding what percentage up to 20 percent should be awarded to the assignee pursuant to *N. J. S.* 2A:19–43. Thus, the problem of the exact meaning of the troublesome phrase still remains.

Although a portion of the holding in the case to which I referred, *In re Pynn-Hawley Co., supra,* was overruled by the Appellate Division in *In re Xaviers, Inc., supra,* the following language from *Pynn-Hawley* still retains its initial importance and precedential value:

"[T]he basic purpose of the assignment is to benefit the creditors * * * and their interest under all of the circumstances must be paramount.

* * * It is to be noted that the forum generally is that of the probate division and * * * therefore the general rules pertaining to the administration of estates apply, subject of course to specific statutory provisions, and that commissions and allowances should be based on the established and accepted rule depending on the actual pains, trouble and risks involved in settling the estate." 63 *N. J. Super.*, at p. 53.

See also *In re Trylon Radio Laboratories, Inc., supra.*

The attorney for the assignor maintains, in keeping with the observation in *Pynn-Hawley,* that "general rules pertaining to the administration of estates apply" in assignment for the benefit of creditor cases, that only the net operating income can be included as money received by the assignee. Two earlier cases, *In re Hugh Mullen,* 35 *N. J. L. J.* 43 (*Orph. Ct.* 1912) and *Gilligan v. Daly,* 79 *N. J. Eq.* 36 (*Ch.* 1911), are relied upon in support of the position taken by the assignor's attorney. Both of these cases interpreting the phrase, "Sums which shall come into the hands of executors" (under sec. 129 of the Orphans Court Act of 1898), reached the conclusion (*Gilligan* in *dicta,* and *Mullen* so holding) that where an executor has the proper authority to continue the business of a testator and he does so, his compensation is included in his commissions as executor, and the basis for fixing commissions is not the gross receipts or the expenses of the business, but the net income and the amount by which this increases the *corpus* of the fund.

While I subscribe to and agree with the conclusions reached by the two preceding cases, they are not applicable to the present case since the operation by the assignee yielded a net loss and not a net gain. In this connection, it should be pointed out that no claim is made by any of the parties that the loss was occasioned by mismanagement or improper action on the part of the assignee. The inference is that normal business vicissitudes in operating a business of the kind in question were the primary cause of the net loss.

■ The position advanced by the United States is equally unacceptable to the court in view of the nature of the insolvent's estate. Thus, while the inventory and appraisal on file show the value of the assignor's assets at the time of the assignment to be $13,500 (this sum is what the United States seeks to have the court utilize in its calculation of fees) the actual value of the assets and the amount received by the assignee was $32,226.20. This figure represents the difference between the operating income of $76,940.05, and the deposits made from December 28, 1961 to August 2, 1962, in

the amount of $109,166.25. Therefore, I conclude that commissions, allowances and fees are to be based on the sum of $32,226.20. Incidentally, this is just $10 less than the total gross amount of the "estate assets" and the sum received by the assignee from Deb Trucking pursuant to the indemnity agreement to which I previously referred.

A review of the information contained in the separate affidavits submitted by the assignee and his attorney, with due consideration being given to the nature of the business and the pain, trouble and the risk experienced by each (the assignee shows 150 hours of work and his attorney 135 hours), indicates that an award of $2,250 for each of them is adequate. Additional sums of $557.56 for disbursements made by the assignee and $32.06 for disbursements made by the assignee's attorney shall also be added to the previous figures where applicable.

In addition to the commissions given to the assignee and the fee awarded his counsel, a fee of $250 will be allowed to the attorney for the assignor for his services performed in the successful effectuation of the assignment in question. While the court in the case of *In re Pynn-Hawley Co., supra,* at *p.* 55, was unable to find authority to support such a conclusion, the later case of *Laudan v. A. B. C. Travel System, Inc.,* 64 *N. J. Super.* 204, 209 (*Ch. Div.* 1960) allowed a counsel fee to the attorney for the creditor instituting a receivership action on the ground, *inter alia,* that he was performing a service which benefited a class of creditors. *Cf.* also *In re General Assignment for Benefit of Creditors of Shay, supra,* at *p.* 424. This practice should apply, in a like manner, to an assignment for the benefit of creditors where the assignment redounds to the benefit of a creditor class. See *R. R.* 4:69. *Cf. In re Xaviers, Inc., supra,* at *p.* 568.

Finally, I find that the objection raised by certain of the officers and directors of Francilli Carriers, Inc. to the allowances sought on the ground that they might be forced to pay any deficiency under the United States tax claim is totally lacking in merit as to the issues of the present case.

An appropriate form of judgment reflecting the conclusions reached by the court, *i. e.*, $2250 in commissions for the assignee (plus disbursements of $557.56), $2250 for the assignee's attorney (plus disbursements of $32.06), $250 for the attorney for the assignor, and the balance to the United States Government, may be presented.