IN THE MATTER OF THE ESTATE OF PETER RISICA, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted May 19, 1981—Decided June 24, 1981.

Before Judges FRITZ, POLOW and JOELSON.

*Smith, Cook, Lambert & Miller*, attorneys for exceptant-appellant, Frank Risica (*Samuel W. Lambert*, III and *Frederick E. Cammerzell*, III, on the brief).

*Lario & Nardi*, attorneys for respondent (*Ronald J. Cappuccio*, on the brief).

The opinion of the court was delivered by

FRITZ, P. J. A. D.

Appellant, a brother of decedent who died unmarried and intestate, excepted to the first and final account of the administratrix. He now appeals from a judgment allowing the account

"as presented," allowing corpus and income commissions, and ordering, among other things, the payment of attorneys' fees and costs and accountant's fees.

No testimony was taken in the trial court respecting this challenge, although it appears that in an earlier proceeding a different judge foresaw the possibility that a plenary hearing would be needed. The accounting (about which no serious question was raised) was allowed, counsel fees aggregating nearly $19,000, including nominal costs, were awarded and a fee was allowed to a certified public accountant in the amount of $2,500, all after argument supported only by various affidavits.

The issues on this appeal do not really present difficult questions of law. As expressly recognized by the trial judge in his written opinion, "the major issues here involve the propriety of counsel's and accountant's fees incurred by the Administratrix," as well as concern by appellant for the failure of the administratrix to amend estate tax returns to reflect the diminished value of the real property, and here, for the denial of counsel fees from the estate to him.

The law seems quite apparent, is correctly stated in part in the opinion of the trial judge, is expressed reasonably harmoniously in the respective briefs and seems to us to warrant no particular agony. Perhaps too succinctly reviewed it is: The duty of an administratrix is to do what is necessary to the administration of the estate with the degree of care, prudence, circumspection and foresight that an ordinary prudent person would employ in matters of his own. *In re Mild*, 25 *N.J.* 467, 480–481 (1957); 6 *N.J. Practice (Clapp, Wills and Administration)* (3 ed. 1962), § 987 at 466; *see Plainfield Trust Co. v. Hagedorn*, 28 *N.J.* 483, 491 (1958). Work which is beyond the ordinary or reasonably to be expected skill and ability of a fiduciary may be supplied by an expert retained by the fiduciary where necessary or advisable, and the expert will be paid from the estate. *Hagedorn v. Arens*, 106 *N.J.Eq.* 377, 383 (Ch.1930); 6 *N.J. Practice, op.cit.*, § 995 at 495–499. However, work or

services which do not require expert attention or professional skill cannot be delegated but must be performed by the fiduciary and compensated only by way of his commissions. *In re Bloomer*, 37 *N.J.Super.* 85, 90–91 (App.Div. 1955); 6 *N.J. Practice, op.cit.*, § 995 at 497–498. The burden of proof is on the fiduciary to establish to the satisfaction of the court that the services of another qualify for payment from the estate. *Pyatt v. Pyatt*, 44 *N.J.Eq.* 491, 495 (Prerog.Ct. 1888), aff'd in this respect 46 *N.J.Eq.* 285, 291 (E. & A. 1889); *Hagedorn v. Arens, supra*, 106 *N.J.Eq.* at 385; 6 *N.J. Practice, op.cit.*, § 995 at 498. Numerous factors control the amount which may be allowed for expert help, which amount must never in any event exceed reasonable compensation for the services rendered. *In re Bloomer*, 43 *N.J.Super.* 414 (App.Div. 1957), certif.den. 23 *N.J.* 667; *In re Bloomer supra*, 37 *N.J.Super.* at 93–94. Finally, respecting exceptant's request for a counsel fee from the estate, a suitor whose complaint materially benefits an estate may reasonably expect to have the estate reimburse him for the reasonable cost of the effort. *In re Shay Creditors' Assignment*, 75 *N.J.Super.* 421, 424–425 (App.Div. 1962), certif.den. 38 *N.J.* 313 (1962); *In re Broad St. Nat'l Bank*, 37 *N.J.Super.* 171, 174–175 (App.Div. 1955).

In one important respect the trial judge misstated the law in his written opinion. He said:

.... Exceptant here argues that counsel's marshalling of assets under the circumstances of this case, falls within.the sole responsibility of the Administratrix. There is no authority for this proposition, and it is rejected.

The precise proposition was affirmed in *In re Mild, supra*, where the following appears:

It is not asserted that Mrs. Dorn [the administratrix] was negligent in the selection of Halstead as her attorney. Nor is she charged with fraud, collusion, bad faith or malfeasance in the administration of the estate. The sole issue is whether she acted as an ordinary prudent person in the performance of her duties. It is obvious that Mrs. Dorn made no attempt to marshal the assets of the estate; that she offered no supervision over Halstead's activities; that she had no knowledge of what the estate consisted and made no attempt to gain such knowledge; and that she did little more than make casual inquiries as to the progress of the administration of the estate and was satisfied with Hal-

stead's replies to the effect "Everything is coming along fine and will be closed soon." In short, she totally abdicated her duties as administratrix in favor of Halstead. Therefore, we agree with the conclusion of the trial court that Mrs. Dorn was negligent in her administration of the estate.

Mrs. Dorn as administratrix was under a non-delegable duty to collect and preserve the estate assets. *Speakman v. Tatem*, 48 *N.J.Eq.* 136, 149 (*Ch.* 1891), affirmed 50 *N.J.Eq.* 484 (*E. & A.* 1892); *Travers v. Reid*, 119 *N.J.Eq.* 416, 418 (*Ch.* 1936). See 2 *Scott, Trust* (2d ed. 1956), § 175. She had the duty to actively supervise the administration of the estate by Halstead. [25 *N.J.* at 481]

We turn to the determination brought here by this appeal for review. At the outset we observe that the opinion of the trial judge is appallingly free of findings of fact. Conclusions appear. The trial judge opines that exceptant's arguments are not convincing and that the fees requested are reasonable. He determines that the son of the administratrix, a lawyer, did, along with another firm of attorneys representing the estate, "render compensable legal services." He declares that exceptant's "argument that [certain accounting] services should have been performed by counsel to the Administratrix is similarly unconvincing." But for findings he substitutes such generalities as "[i]t is important to emphasize that this determination is made not only on the basis of time spent by the attorneys [a fact not elsewhere discussed in the opinion other than one statement reporting "a great deal of time"], but on the basis of all facts which have been brought to the attention of the court."

As a result we are unadvised of that which led the trial judge to his conclusions. Explicit factfinding is the duty of a trial judge. *State in the Interest of J.M.*, 57 *N.J.* 442 (1971). Entirely appropriate here is an iteration of our comment in *State v. Singletary*, 165 *N.J.Super.* 421 (App.Div. 1979), certif. den. 81 *N.J.* 50 (1979):

... [W]e observe that the attention of trial judges is constantly being directed toward the necessity for specific findings. As we said in *Reiser v. Simon*, 63 *N.J.Super.* 297 (App.Div. 1960):

* * * A trial judge must be explicit in his recital of the evidence and in his factual findings and must so correlate them to his legal conclusions that the * * * judgment entered manifestly appears to be undergirded by legal proof of substantial probative value and by specific factual findings thereon. * * * [at 300–301]

In *Kenwood Assocs. v. Englewood Bd. of Adj.*, 141 *N.J.Super.* 1 (App.Div. 1976), we pointed out that

> * * * a trial judge in a nonjury case has the duty to set forth fully his findings and reasons, factual and legal, for reaching his decision. *R.* 1:7–4; Conford, "Findings of Facts and Conclusions of Law," 92 *N.J.L.J.* 225 (1969). Mere conclusory terminology * * * does not suffice. Such perfunctory treatment constitutes a disservice to the litigants, the attorneys and the appellate court. [at 4]

[At 424–425]

This alone would warrant remand.

■ Of equal concern to us is the willingness of the trial judge to determine this matter on affidavits and the repeated emphasis in his opinion on rejection of "exceptant's arguments." Passing for the moment the legal proposition documented above that the administratrix has the burden of justifying estate payment of experts and professionals enlisted to assist her, we perceive ample suggestion in the affidavits that a longer look should be taken. If this view is sound, then it seems apparent that a debate over facts presented in an affidavit should not have been substituted for an exploration in testimony and a testing by cross-examination of the substance from which those facts were constructed.

■ By way of example we turn to the affidavits of those in the law firm which represented the estate. We question, for instance, the necessity for professional service, in lieu of the duty of the administratrix to perform such common and unskilled functions, in such tasks as obtaining a death certificate, securing the Social Security numbers of other beneficiaries, terminating "various memberships" (presumably of decedent), discussing with tenants of estate properties payment of rent and their vacation thereof, changing a mailing address, paying bills including the funeral bill, opening a savings account and depositing funds, securing keys to property and furnishing these to a realtor for showing of houses for possible sale. On the face of it, it would seem that all the foregoing functions (as well as others which appear) should have been performed by the administratrix but were, according to their affidavits, performed by counsel for whom a fee from the estate is here sought.

■ We are also troubled by the fact that the reason this estate required two law firms (or separate legal entities: one a law firm, the other the lawyer son of the administratrix) does not appear. In fact the affidavit of the son on its face raises some question about the nature of his engagement. He sets forth first that he "was requested by my Mother ... to act as *her attorney* upon the decedent's family selecting her to act as Administratrix." (Emphasis supplied.) Thereafter, he "requested Joseph M. Nardi, Jr., Esquire, to act as New Jersey counsel in the administration of the decedent's estate." Nor has it escaped our attention that the affidavits of Mr. Nardi, his partner and successor to estate responsibility Frank M. Lario, Jr. and the son in effect duplicate time charged for services made necessary only by the duplication of counsel, such as conferences and telephone calls.

As is the exceptant, we are disturbed that on the face of the record it does not appear why an estate of this size and nature took so many years to conclude.

■ Finally, no effort was made to ascertain why the administratrix did not move to amend estate tax returns which reported a value of $9,750 for real property later determined to be essentially worthless and sold for $1. Respondent argues to us that the diminution in value "took place over a five-year period in time subsequent to the decedent's death." This may be so. But the record is silent respecting this facial conundrum. The judge disposed of the matter with the comment, "No probative evidence has been presented on this issue and the exception is summarily dismissed." His duty to ascertain, before approving this final accounting, that the administratrix did perform with the "degree of care, prudence, circumspection and foresight that an ordinary prudent person would employ in like matters of his own" (*In re Mild, supra,* 25 *N.J.* at 480) should have inspired greater curiosity.

These matters at the very least—especially in the absence of findings with respect thereto—persuade us to vacate the judg-

ment below in its entirety. The matter is remanded for findings of fact. Further proceedings including testimony at a plenary hearing may well be essential to permit the fact finding process. The trial judge is at liberty, of course, to order them.

The judgment is vacated and the matter is remanded. We do not retain jurisdiction.