```
┌─────────────────────────────────────────────────────────┐
│           NOT FOR PUBLICATION WITHOUT THE                │
│           APPROVAL OF THE APPELLATE DIVISION             │
│                                                          │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R.1:36-3.     │
└─────────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3932-14T4

IN THE MATTER OF THE
GENERAL ASSIGNMENT FOR
THE BENEFIT OF CREDITORS
OF VILLAGE SUNDRIES &
TOBACCO, INC., d/b/a
VILLAGE DISTRIBUTORS, TO
BARRY W. FROST.

_____

Submitted October 25, 2016 — Decided  April 21, 2017

Before Judges Reisner and Rothstadt.

On appeal from Superior Court of New Jersey,
Chancery Division, Ocean County, Docket No.
191663.

Ronald Horowitz, attorney for appellants
Direct Coast to Coast, LLC and Selective
Transportation Corporation.

Trenk, DiPasquale, Della Fera & Sodono,
P.C., attorneys for respondent Village
Sundries & Tobacco, Inc. (Anthony Sodono,
III, of counsel; Michele M. Dudas, on the
brief).

Brian W. Hofmeister, attorney for respondent
Barry W. Frost.

PER CURIAM

Appellants, Direct Coast to Coast, LLC (Direct), and Selective Transportation, Corp. (Selective), are creditors of Village Sundries and Tobacco, Inc. (Village), the debtor in this assignment for the benefit of creditors (ABC) action.[1] They appeal from the Chancery Division's March 18, 2015 order allowing commissions to Village's assignee, Barry W. Frost, and attorney's fees to special counsel, Trenk, DiPasquale, Della Fera & Sodono, P.C. (Trenk). The court previously authorized Frost to retain Trenk for the purpose of pursuing counterclaims in litigation that had been filed against Village. Appellants argue the award of a full commission to Frost was unconscionable "considering that the [a]ssignee did very little, if anything, in this matter" and that Frost "did not present any evidence whatsoever of work he performed for the estate." As to the court's fee award to Trenk, they argue the application was procedurally defective, as "not a single factor enumerated by R.P.C. 1.5 [was] addressed . . . by [Trenk's] [a]ffidavit of [s]ervices." According to appellants, the defects should have resulted in the denial of the application. Finally,

---

[1] Appellants, who had filed a complaint in March 2011 to recover monies owed by Village, were among approximately thirty creditors who filed claims in this action. The allowed claims totaled in excess of approximately three million dollars.

they contend that their counsel was entitled to a fee award. We disagree and affirm.

The history leading to this dispute can be summarized as follows. Trenk, as counsel to Village, initiated the ABC on May 31, 2011, establishing Barry W. Frost as assignee.[2] At the time of the assignment, Trenk had been representing Village in a federal district court matter that was pending in the Southern District of New York in which Village was named as a defendant (New York action).[3] The Chancery judge in the ABC action entered an order on April 27, 2012, authorizing Frost to retain Trenk as "special counsel . . . for the purpose of representing the [a]ssignee in pursuing counterclaims against [plaintiff] in [the New York action]." On January 7, 2013, the district court entered a judgment against Village in favor of the plaintiff in the New York action in the amount of $558, 179.98 and administratively closed

---

[2]  On July 7, 2011, the Chancery Division entered an order authorizing the assignee to retain the law firm of Teich Groh as attorneys for Frost, as assignee. Frost was a partner at Teich Groh until the firm ceased operating on December 31, 2013. A second firm assumed the role of counsel to the assignee.

[3]  The action was captioned Strategic Funding Source, Inc. v. Petegorsky, Docket No. 11 Civ. 7376.

the matter due to the remaining defendants having sought relief in bankruptcy.[4]

Frost filed an application in this action on December 1, 2014, seeking approval of his final accounting, allowing payment of his commissions, approval of fees and costs for payment of professional administrative claims, and final approval of the proposed distribution of Village's estate. Appellants filed objections to the assignee being awarded the maximum commission allowed under N.J.S.A. 2A:19-43 and to Trenk being awarded the amount of fees contained in its application. They asserted "the total [attorney's] fees [and] the total commission should be deemed as unconscionable if not outrageous." Appellants claimed that the amount collected by the assignee on the accounts receivable did not warrant an award of a full commission or counsel fees. Appellants also challenged the reasonableness of the $400 per hour rate charged by Trenk.

The Chancery judge considered oral argument on January 28, 2015, and requested additional submissions from counsel. The additional materials submitted by Frost included copies of Trenk's detailed billing records, denoting the exact services rendered and

---

[4] It is not clear from the record whether this dismissal was the result of Trenk's efforts.

time expended. In addition a certification of counsel was submitted that included a curriculum vitae (CV) for the attorney handling the matter. The CV described counsel's experience in the field of debtor/creditor's rights and related matters.

On March 18, 2015, the Chancery judge rejected appellants contentions for the reasons stated in an oral decision placed on the record that day.[5] The judge entered an order awarding Frost the full statutory commission of twenty percent, totaling $32,098.11. He awarded Trenk $12,811.87 in fees and $19.20 in costs.

In his decision, the Chancery judge stated he found it inappropriate to entertain appellants' argument, which he considered a "blanket objection" that lacked reference to specific case law and supporting certifications. The judge also found that due to the poor condition of Village's financial records, counsel was required to expend more time than would otherwise be necessary to pursue Village's claims, especially when the time expended was compared to the amounts recovered. He stated:

> [O]n the issue as to the success ultimately achieved versus the percentage of fees -- professional fees and commission[] cost[s] sought, the Court notes that due diligence and a fair, reasonable and appropriate period of

---

[5] Appellants did not provide us with a transcript of that argument. We glean from the judge's decision the nature of the arguments raised by the parties.

service for the assignment of the benefit of creditors was necessary.

No one objected to the characterization, representation made on the record . . . on numerous occasions . . . that [Village] did not maintain accurate or even what one might characterize as good, appropriate records. Rather, they were sloppy, they were difficult to ascertain and sort through. . . .

And the fact of the matter is, as is often the case in sometimes modest estate litigation, the hours spent and the fair, reasonable entitlement to fees, costs, [and] commissions do not necessarily equate automatically with the amount recovered. The services were fair[,] reasonable[,] and appropriate, commensurate with the fact of [Village] not keeping records.

Turning to appellants' objection to Trenk's $400 per hour rate, the judge found the rate sought was reasonable and commensurate with those charged by "probate attorneys" throughout the State of New Jersey. He noted the extensive experience of counsel in probate matters and observed that, even if he were to adjust the hourly fee downward to $300, the reduction in overall fees would be offset by new fees incurred in generating the updated accounting. He also confirmed that the court carefully reviewed counsel's submissions to make sure they were accurate in their calculation of their fee, stating that they had "been double [-]checked." The judge concluded counsel took fair, reasonable steps to recover accounts receivable; and, accordingly, "counsel's

entitled to compensation for those efforts, for those legal services rendered, as well as for hiring of [Trenk] . . . and the cost disbursements rendered on behalf of the client."

This appeal followed.

"[T]he allowance of assignee's commissions and attorney's fees ordinarily rests within [the trial judge's] sound discretion and should be upset only if the exercise thereof is manifestly erroneous." In re Assignment for Benefit of Creditors of Munson-Lied Co., 68 N.J. Super. 281, 289 (App. Div. 1961). We will disturb a trial court's allowance of commissions and award of counsel fees "only on the rarest of occasions[.]" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co., Inc. v. Collier, N.J. 427, 444 (2001)).

Applying this standard, we conclude the Chancery judge did not abuse his discretion in awarding Frost the full statutory commission or Trenk the full amount of the counsel fees and costs it applied for as special counsel. We affirm substantially for the reasons expressed by the Chancery judge. We add only the following comments.

An ABC proceeding "is a state court-administered liquidation proceeding similar to a Chapter 7 bankruptcy proceeding whereby an individual, partnership, or corporation in financial distress can liquidate its assets in an orderly fashion to equitably pay

7

its creditors."  44 New Jersey Practice, Debtor-Creditor Law and Practice § 3.1, at 109 (Michael D. Sirota & Michael S. Meisel) (2000) (citing Gilroy v. Somerville Woolen Mills, 67 N.J. Eq. 479 (Ch. 1904)).  ABC proceedings in New Jersey are governed by N.J.S.A. 2A:19-1 to -50.  The statute's purpose is to treat all creditors equally and avoid any disproportionate payments to a favored creditor.  N.J.S.A. 2A:19-2.

In an ABC proceeding, "an individual, partnership or corporation, known as the 'assignor,' voluntarily assign[s] by transfer or conveyance all of its assets in trust to an independent third party, known as the 'assignee.'" New Jersey Practice, supra, § 3.1. at 110.  The assignee acts in a "dual capacity" pursuant to powers set forth in N.J.S.A. 2A:19-13 and N.J.S.A. 2A:19-14. The assignee "'stands in the shoes' of the assignor with general powers to act in his stead as his 'successor,'" In re Gen. Assignment for Benefit of Creditors of Brill's Hardware Co., 67 N.J. Super. 289, 292 (Cty. Ct. 1961) (citations omitted), and has "full power and authority to dispose of all of the assignor's property . . . as the assignor had at the time of the general assignment." N.J.S.A. 2A:19-13.  The assignee also "represent[s] the assignor's entire creditor constituency."  New Jersey Practice, supra, § 3.31 supra, at 118.  In that capacity, the assignee has "the same power to set aside conveyances and to

recover or reach assets for the benefit of the creditors as a creditor would have who was the holder of a judgment and levy against the assignor and his property at the date of the assignment." N.J.S.A. 2A:19-14.

Compensation for an assignee is left to the court's discretion, but may not exceed "[twenty percent] on all sums received by the said assignee." N.J.S.A. 2A:19-43. In determining the amount, "the court should look to the nature of the [assignor's] business and its attendant problems." In re Francilli Carriers, Inc., 77 N.J. Super. 522, 526 (Ch. Div. 1962). "[T]he [twenty] percent limitation . . . is confined to sums awarded directly to the assignee and does not include items of expense paid out of the estate for which court approval is sought, that is, attorney fees, auctioneer fees and the like. Id. at 526. See also In re General Assignment for Benefit of Creditors of Shay, 75 N.J. Super. 421, 439-40 (App. Div. 1962).

An assignee's engagement of an attorney to provide professional services "can only be accomplished by motion and affidavit seeking a court order . . . ." In re Xaviers, Inc., 66 N.J. Super. 561, 567 (App. Div. 1961). Court approval of the retention is a condition to any award of counsel fees for services performed on behalf of the assignee. See Francilli, supra, 77 N.J. Super. at 526. Applications for an award of counsel fees

from the assignor's estate must be supported by a certification of services containing the information required by <u>Rule</u> 4:42-9(b), including "the factors enumerated by [<u>R.P.C.</u> 1.5(a)]." <u>R.</u> 4:42-9(b)(emphasis added). However, "an award of counsel fees may be affirmed even if the affidavit of services is deficient." <u>Elizabeth Bd. of Educ. v. N.J. Transit Corp.</u>, 342 <u>N.J. Super.</u> 262, 272-73 (App. Div. 2001).

Applying these guiding principles, we discern no reason to vacate the Chancery judge's award of the commission or counsel fees. Turning first to Frost's commission, the judge properly considered the nature of Village's business, the involvement of approximately thirty creditors, and the problems arising from Village's poor maintenance of its business records. Contrary to appellants assertions, the fact that the amounts recovered by the assignee were not substantial in relation to the creditors' claims and that there were no billing records associated with the assignees efforts, the assignee was still entitled to a commission up to the statutory cap.

We are not persuaded otherwise by appellants' reliance on <u>Munson-Lied</u>. In that case, unlike the present matter, in addition to the statutory commission, the assignee received an award for attorneys fees for legal services he performed. <u>Munson-Lied</u>, <u>supra</u>, 68 <u>N.J. Super.</u> at 578. Here, the assignee was awarded his

twenty percent commission separate and distinct from the fees awarded to Trenk or to other firms that acted as counsel to the assignee. There was no evidence that the assignee received a double award.

As to the award of counsel fees to Trenk, although the information required by Rule 4:42-9(b) was not expressly included in counsel's certification of services,[6] the Chancery judge had adequate information available to him to assess many if not all the factors in order to reach his conclusion about Trenk's entitlement to the fees claimed. Specifically, the judge noted the time, labor and difficulty of the questions involved, the results obtained, the length of relationship with the client, the fee customarily charged in the locality, and the experience, reputation, and ability of the lawyer or lawyers performing the services. See R.P.C. 1.5(a)(1),(3),(4),(5),(6), and (7). Accordingly, while Trenk's application was procedurally deficient, the judge was able to make findings based upon billing statements, representations made by counsel, and the resumes of the attorney's seeking fees that address the necessary factors. Moreover, in

---

[6] Trenk argues that its fee application was not subject to the requirements of Rule 4:42-9(b) because it was seeking fees payable from a fund in court under Rule 4:42-9(a). We disagree. Rule 4:42-9(b) is applicable to all fee applications where the court is called upon to make a determination of the amount based on reasonableness.

making his award, the judge limited it to those fees incurred for services "which benefited [the] creditors." Francilli, supra, 77 N.J. Super. at 529 (allowing fees "to the attorney for the assignor for his services performed in the successful effectuation of the assignment in question").[7]

Finally, appellants aver that if Trenk is entitled to a fee award, then they too should be compensated for paying legal fees to their attorneys whose work benefited all the creditors. While we agree that a creditor's attorney may be entitled to fees where the attorney renders "valuable services . . . for the benefit of all the creditors," In re Gen. Assignment, supra, 75 N.J. Super. at 424-25 (finding "attorney's objections to the commissions, counsel fees and disbursements operated materially to the benefit of the estate and the ultimate benefit of the creditors generally . . . entitl[ing attorney] to the reasonable counsel fee awarded to him by the trial court"), we find no evidence that such an application was made to the Chancery judge or that such services were in fact provided by appellants' counsel in this case. Without the issue being properly raised before the Chancery judge, we have

_____

[7]   We discern from the record that some of the fees associated with Trenk's pursuit of the counterclaim in the New York action were for services performed prior to the entry of the order appointing it as special counsel. However, we conclude that the Chancery judge did not abuse his discretion by awarding those fees because they were incurred for the purpose approved by the court.

no cause to determine the issue.  See <u>Nieder v. Royal Indem. Ins.</u>
<u>Co.</u>, 62 <u>N.J.</u> 229, 234 (1973).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION