MARY E. PYATT, appellant,

*v.*

MARY N. PYATT, respondent.

1. For seven years after her father's death, an infant daughter lived, as a member of the family, with her mother and brothers and sister, upon a farm, in which she and they each had some right and estate. Then the mother was appointed her guardian. Thereafter, until she became of age, the infant continued to live as before. The mother made no application to a proper court for an allowance for the infant's maintenance, and kept no account of any expenditures that she may have made for her ward.—*Held*, that the mother will not, when cited to account, eleven years after the daughter became of age, be allowed for the maintenance of her ward, from the time she was appointed guardian until the ward became of age.

2. A guardian's account in the orphans court should close at the termination of the guardianship. The orphans court has no jurisdiction over accounts of dealings subsequent to that time.

3. Where the guardian fails to account for twelve years after her appointment, and then does so only in obedience to citation, she will not be allowed commissions.

4. A guardian may employ counsel, when such employment is necessary to the due protection or proper management of the estate, and reasonable charges for his services will be paid out of the estate.

5. It is the duty of a guardian to keep accounts, and to render an account of her guardianship at the times required by law. Her commissions compensate her for this work, and she will not be allowed for the expense of an accountant from the estate.

6. In matters of discharge the burden is upon the accountant to satisfy the court that a disputed item should be allowed.

7. Where a guardian fails to account at the time required by law, and is cited to do so, she must pay the costs of the citation and the proceedings thereon, unless the court is induced, by substantial cause, to order otherwise.

On appeal from a decree of the orphans court of Middlesex county.

Samuel L. Pyatt died intestate, on January 11th, 1868, leaving his widow, Mary N. Pyatt, and his daughter, Mary E. Pyatt, and three other children, him surviving. He died seized of the farm, upon which he had lived with his wife and children, and possessed of some personal estate. Letters of administration, upon his estate, were granted to his widow and her father, Samuel D. Kelly.

On August 18th, 1874, the widow was appointed the guardian of her daughter, Mary E. Pyatt, by the orphans court of Middlesex county. On October 5th, 1876, the daughter became of age, and on April 7th, 1887, she petitioned the orphans court of Middlesex county to cite her guardian to account. Later in the same month, the guardian filed an account in obedience to the citation, whereby she charged herself with $537.32, and prayed allowance for $2,093.23. Among the items, for which allowance was asked, was a charge of $1,872, for the board and maintenance of the ward, from January 1st, 1875, to December 31st, 1886, at the rate of $3 per week, and also charges, for "counsel

fee and making account," commissions as guardian, court and surrogate's fees on the accounting, and the costs of the citation to account and the proceedings thereon, amounting in all to the sum of $68.

The guardian, in disregard of her duty under the statute, had never before accounted. After her husband's death, she and her children continued to make the farm their home and to reside together, as one family. The widow's dower was not assigned to her, and the children did not ask for a division of the property. The mother controlled the management of the farm and of all money matters, and, in all things, was the head of the household. The daughter, Mary, who is the appellant in this matter, lived in the family as a member of it until about January 1st, 1887.

To the account rendered, the appellant filed exceptions, by which she objected to the charge for her board and maintenance and, as well, to the allowances asked for costs, commissions, counsel fee &c.

*Mr. Robert Adrain,* for appellant.

*Mr. J. Kearney Rice,* for respondent.

THE ORDINARY.

I think that the orphans court erred in allowing the item, $1,872, for the maintenance of the appellant. Of this sum, about $275 are charged for her maintenance during minority, and the remainder for her maintenance after she became of age.

The allegation is, that the entire moneys that came to the guardian's hands, and other moneys, were expended in the maintenance of the household of which the appellant was a member. The expenditures for the appellant's sole benefit are not, and cannot be, specified. The guardian failed to keep any accounts, and all that she can say with reference to the moneys that were entrusted to her is that they, with all other moneys within her control, were expended in maintaining the household, from 1874 to 1887.

I shall consider this item, first, with reference to that part of it which is charged against the appellant as an infant, and, then,

with reference to that part of it which is charged against her as a person of full age.

For seven years after her father's death the appellant resided in the family presided over by her mother, and there is no pretence that any compensation was expected for her maintenance, nor is any now claimed, for that time. Her mother then became her guardian, but there was then no change in the manner of living. No application was made to a court for the allowance of maintenance out of the infant's estate. Neither, indeed, does it definitely appear that any of the ward's money was expended during her infancy; nor that the support she received, came from her mother. I fail to perceive how an allowance for support, during that time, can be intelligently made. I think that, during the infancy, the appellant and respondent must be regarded as standing in the relation of members of one family, in which the mother cared for her child, without expectation of compensation. *Haggerty* v. *McCanna, 10 C. E. Gr. 48 ; Schaedel* v. *Reibolt, 6 Stew. Eq. 534 ; Dissenger's Case, 12 Stew. Eq. 227.*

The accounting in question should not treat of the moneys charged against the appellant for board and maintenance after she became of age. The account should be closed at the termination of the guardianship, and the balance ascertained and decreed, as of that date. The orphans court has no jurisdiction to take an account of the subsequent dealings between the parties. The testimony strongly indicates that, after the appellant became of full age, there was a tacit understanding between her and her mother, evidenced by her acquiescence in the mother's disposition of her moneys, that the moneys were to be used for the living expenses of the family, and that, to the extent of them, she was to compensate her mother for her maintenance. But that question is not to be determined upon this appeal.

These views lead me to the opinion that the item, $1,872, for board and maintenance of the appellant should have been disallowed.

The second objection is to the allowance of commissions and counsel fee to the guardian, and the costs of the accounting and of the citation to account.

Pyatt v. Pyatt.

In *Dissenger's Case, 12 Stew. Eq. 227*, the guardian, upon being cited, accounted five years after he received the last moneys for his ward, and then nearly fifteen years had elapsed since his appointment as guardian. This court refused to allow him commissions, because of his unlawful delay in accounting. In this case, upon being cited, the guardian accounts nearly thirteen years after her appointment and after the receipt of the last moneys for her ward. Upon the authority of the *Dissenger Case*, she should not be allowed commissions.

The charge for counsel fee is in the following language: "Counsel fee and making account, $15." It appears to be for two services to the guardian—legal advice and the preparation of an account. This item is not explained in the testimony taken upon the exceptions, and, therefore, I am unable to say how much of it was intended to cover the fee of counsel, or how much of it was required to pay for the preparation of the account. Nor can I determine whether the advice of counsel was necessary to the proper management of the ward's estate. A guardian may employ counsel when such employment is necessary to the due protection or proper management of the estate, and reasonable charges for his services will be paid out of the estate. *Wolfe's Case, 7 Stew. Eq. 223; Kingsland v. Scudder, 9 Stew. Eq. 284.* But it is the duty of the guardian herself to keep the accounts of the estate, and to render an account of her guardianship at the times required by the law. Her commissions compensate her for this work. If she employs another to do it in her stead, she must pay that person from her private purse. *Ib.*

It is obvious that part of this item should be disallowed, and that the other part of it may not be properly chargeable against the estate. In matters of discharge, such as this, the burden is upon the accountant to satisfy the court that the disputed item should be allowed. *Kirby v. Coles, 3 Gr. 441.* There is nothing in the case from which it can be determined whether any part of this item should be allowed. It must then be disallowed.

The ninety-eighth section of the orphans court act (*Rev. p. 773*) provides that where a guardian shall fail to account as the law requires, he may be cited to account, and that the costs of such

citation and of the proceedings thereon, shall be paid by the guardian out of his private estate, unless the court, for good cause, shall order otherwise. I see no reason why the accountant, in this case, should be relieved from the payment of these costs. Before the court can relieve her, it must be satisfied that good and substantial reasons for doing so exist. The court cannot grant such release as an act of bounty or because of sympathy. The fees of the court and surrogate, save so far as they grow out of the exceptions to the account, should be paid out of the estate, but so far as they relate to the exceptions they must be paid by the accountant.

The decree of the orphans court will be reversed, with costs.