43 N.J. Super. 414 (1957)
129 A.2d 35
IN THE MATTER OF THE ESTATE OF EDGAR NELSON BLOOMER, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1957.
Decided February 4, 1957.
*415 Mr. Sidney Reitman argued the cause for appellant Verna Mae Bloomer (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys).
Mr. Harold H. Fisher argued the cause for respondent David M. Satz (Messrs. Shanley & Fisher, attorneys).
Before Judges CLAPP, JAYNE and FRANCIS.
PER CURIAM.
The sole question presented by this appeal is whether the counsel fee of $18,000 allowed to the attorney for the estate is excessive. The same problem was presented earlier to Part B of this Division. However, then it appeared that the matter had been handled summarily by the County Court on conflicting affidavits. Consequently, the record was remanded for full hearing and for the presentation of such relevant testimony as the parties wished to offer. In re Bloomer's Estate, 37 N.J. Super. 85 (App. Div. 1955).
*416 Following the remand, testimony was taken for four full days and a number of exhibits were introduced. The printed appendix now submitted to us contains 404 pages, of which 264 pages represent testimony and the remainder exhibits, affidavits, the pleadings and judgment. At the conclusion of the final day of the hearing, the trial court delivered an oral opinion in which he stated that he had not only heard the witnesses, but also had reread the affidavits and the transcript of the testimony taken on the three previous hearing days, and that after considering the entire record, he had come to certain conclusions:
(1) That the services rendered by the attorney were all of a legal nature;
(2) That the services were rightfully performed in the course of duty as legal representative of the estate;
(3) That certain services, particularly a federal tax matter involving the problem of whether a $130,000 transaction appearing on the books of one of the decedent's corporations as a loan to him was in fact a dividend, required skill, tact and legal knowledge far above ordinary talent;
(4) That the handling of the estate "enriched" it;
(5) That the portions of the work which were criticized as not being necessary or in the interest of the estate were incidents of his obligation as attorney;
(6) That the services generally were executed skillfully, with success and were of great benefit to the estate;
(7) That the gross estate of decedent amounted to approximately $600,000. (The account listed the gross at $599,127; counsel for the interested legatee claimed that the correct amount is $469,127 because the $130,000 corporate loan to the decedent should be deducted from the value of his stock interest in the corporation.)
Therefore he determined that a fee of $18,000 was reasonable and directed its payment.
Counsel fee allowance is a matter which rests in the sound discretion of the trial court. An appellate tribunal will not interfere unless the record discloses manifest misuse of the discretion. In re Broad Street National Bank of Trenton, 37 N.J. Super. 171, 174 (App. Div. 1955).
The fixing of counsel fees is notoriously a matter of great delicacy and difficulty. No yardstick is available for the purpose; no standard percentages or per diem rates can *417 be recognized which would be fair to both parties in all cases. Precedents afford but little guidance because each case must be judged by its own overall circumstances. The best that can be said in the way of a general standard is that reasonable compensation should be allowed. Runkle v. Smith, 90 N.J. Eq. 478 (Ch. 1919); Annotation, 143 A.L.R. 672 (1943).
The factors which are normally utilized in reaching a determination as to what sum constitutes reasonable compensation in a given case were adverted to in the earlier opinion in this cause. 37 N.J. Super., at page 94. Generally, they are the size of the estate and the amount of legal work necessary to bring it to the point of distribution; the nature of any litigation engaged in along the way, and the amount involved therein; any amounts in dispute or in jeopardy which are resolved without litigation, as well as the nature and complexity of the problem; the time spent over the entire period of administration, the skill exhibited; the danger of financial loss avoided; the amount saved through litigation, conciliation or conference; and the learning, ability, integrity and standing of the particular member of the bar. In re Turnbull's Estate, 1 N.J. Misc. 41 (Orph. Ct. 1923); 7 N.J. Practice Series (Clapp, Wills and Administration), § 962, at page 548 (1950).
Tests such as these have been applied for centuries. One of the earliest regulations in the field was an ordinance of the City of London adopted in 1280. It provided that in fixing the amount of compensation (salaire) of a lawyer, four points should be considered: "the amount of the matter in dispute, the labour (travail) of the serjeant, his value as a pleader (contour) in respect of his learning, eloquence (facunde) and repute (donur) and the usage of the court." Cohen, History of the English Bar and Attornatus to 1450, p. 279.
The testator died on October 25, 1952 and the executors qualified on November 6. The first and final accounting filed February 26, 1955 covered a period of two years; it came on for hearing on April 15, 1955. According to the trust officer of the corporate executor, apparently it was not *418 unusual for the attorney to stop at the bank two or three times a week and discuss matters pertinent to the estate.
In our judgment, it is not necessary to outline in detail the various matters and transactions appearing in the voluminous testimony which the trial court found constituted the services rendered. It is sufficient for the purpose of applying the test of manifest abuse of discretion to the trial court's judgment to make general reference to them. The usual supervisory and consultation services were provided; those which are ordinarily furnished by an estate attorney in connection with the probate proceedings, inheritance tax returns and administration of such a large estate, one which involved consideration of gross assets of almost $600,000.
Counsel cooperated with the corporate attorney in the dissolution and winding up of several corporations which formed the major portion of the estate; with tact and skill, as the trial court found, he brought about a favorable interpretation by the federal taxing authorities of a $130,000 transaction appearing on the books of one of the corporations as a loan to decedent, and thus avoided the construction that the transfer of that sum was a dividend in disguise. If it had been declared a dividend, obviously a large income tax liability would have been imposed. A member of the bar who gave opinion evidence on the value of the services, expressed the view that this transaction alone justified a charge of $15,000. Problems of marital deduction had to be dealt with (although these do not appear to have been particularly serious); assistance was furnished in connection with tax refund litigation begun by the testator in his lifetime; he assisted in the collection of some indebtedness owed the estate; he accomplished a tax saving by an awareness that it could be done by charging administration expenses to the second of two trusts created by the will; he undertook unsuccessfully to recover comparatively small balances in two bank accounts of a deceased sister of the testator's mother, the attempt being necessitated by information given to the corporate executor that the money belonged to Bloomer; papers concerning the sale of stock of one of decedent's *419 undissolved corporations and the sale of certain property in East Orange were examined; and some work was done in connection with alleged encroachments by about fifteen property owners on decedent's homestead property at Deal, New Jersey.
We recognize the difficulties attending the full and complete exposure of all the services rendered by the attorney who handles a sizeable estate. And we appreciate also how matters which loomed large and ominous at the time they were presented and disposed of, may seem less serious if appraised in an unfriendly, critical light, and after their favorable solution. But we agree also with the Supreme Court of Michigan in Eggleston v. Boardman, 37 Mich. 14 (1877):
"It is very evident that the responsibility, the care, anxiety and mental labor is much greater in a case where the amount in controversy is large than where it is insignificant."
Under all of the circumstances presented, and even though we might not have granted quite so much, in our judgment it cannot be said that the allowance shows a manifest misuse of discretion.
Affirmed.