45 N.J. Super. 357 (1957)
132 A.2d 820
IN THE MATTER OF BERTHA BRECKWOLDT, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1957.
Decided June 17, 1957.
Before Judges CLAPP, STANTON and FRANCIS.
*358 Mr. Morris M. Schnitzer argued the cause for the appellants (Messrs. Kasen, Schnitzer and Kasen, attorneys).
Mr. James A. Major argued the cause pro se.
Mr. Gerald E. Monaghan argued the cause pro se.
The opinion of the court was delivered by STANTON, J.S.C.
This is an appeal by the residuary legatees under the will of Bertha Breckwoldt from an order of the Superior Court, Chancery Division, granting allowances for services by the substituted administrator c.t.a. and his counsel.
The background in which this controversy is set may be obtained from the opinion of the Supreme Court affirming the removal of the executor, 22 N.J. 271 (1956), and from its opinion in the disciplinary action, In re Herr, 22 N.J. 276 (1956).
The entire estate has been distributed to the four charitable organizations which are the residuary legatees  the last portion thereof pursuant to an order of the Supreme Court dated July 10, 1956, which provides also that it shall be held subject to a lien and charge for the payment of any allowances which may be made to the substituted administrator and his counsel.
The order appealed from was entered on December 17, 1956, and it provides inter alia:
"Ordered that there be allowed to James A. Major, Esquire, the sum of $10,000.00 for services rendered by him in the above entitled cause for and on behalf of the Estate of Bertha Breckwoldt, deceased, and that there be allowed to Gerald E. Monaghan, Substituted Administrator C.T.A. of the Estate of Bertha Breckwoldt, deceased, the sum of $1,000.00 which said sums are adjudged to be reasonable compensation for services rendered in this proceeding and these said sums shall be paid out of the corpus of the Estate either in the possession of the legatees themselves or being held for their benefit."
A further appeal is pending with respect to fees of counsel representing the residuary legatees. If that is decided adversely to them, then the fees or part of them paid *359 voluntarily by the executor will come into the hands of the substituted administrator.
It may be advisable to mention at this point certain other facts which are not in dispute. The testatrix died on April 10, 1954. The probate of her will was contested and there were extensive depositions taken in pretrial discovery. That litigation was settled with the approval of the court on April 11, 1955, by the payment of $100,000 to the contesting kin and $10,000 to their counsel. The executor qualified on April 15, 1955. As a result of certain matters appearing in the depositions, the Supreme Court on April 25, 1955 ordered Judge Grimshaw to conduct an inquiry into the accusations made against the executor, who was also a member of the bar of this State, and Mr. Major was designated to present the matter before him.
Reference should be made to an agreement entered into between the residuary legatees and the executor on April 27, 1955. In it we find these recitals:
"Whereas by the Sixth Clause of her said will the said testatrix gave and bequeathed her entire residuary estate unto the said Dougal Herr, as executor and trustee, upon the uses and trusts in said will fully stated, the named beneficiaries of said trust being the four charitable institutions hereinabove named as constituting collectively the party of the first part and a fifth institution called the `Kingsley School, Essex Fells, New Jersey,' which Kingsley School ceased to exist prior to the demise of said testatrix, so that the surviving beneficiaries of said trust became and now are the four charitable institutions firstly above named; and
Whereas the said will provides that the executor and testamentary trustee should apportion and pay all or any part of the net income of the trust estate to and among said charities in the absolute discretion of said trustee, he to have due regard to the relative importance of the work of said charities, `and to pay and distribute to any one or more of said charities any part or all of the corpus of the residuary estate, as in the trustee's judgment shall seem desirable and proper, without any obligation to account for the reasons which may actuate him to make such payment or payments.'"
It contains, inter alia, the following provisions: (1) the designation by the executor of Messrs. Schroeder and O'Brien, attorneys for some of the residuary legatees, as his successors as testamentary trustees effective upon his death or earlier *360 resignation; (2) the appointment and designation by the executor, pursuant to the authority mentioned above, of "the four charitable organizations above named (constituting the party of the first part) as the legatees to whom he or his successors shall and will pay the net residuary corpus of said trust estate, plus such income as shall be attributable thereto, the same to be paid to said four charitable institutions equally and share and share alike"; (3) a consent by the residuary legatees that the executor pay to himself for his past services as trustee under the trust inter vivos created by Miss Breckwoldt the sum of $25,000, being 5% of $500,000, a round figure used for this purpose, following a recital that the corpus of that estate amounted to "approximately $531,000" at her death; (4) a further consent by the residuary legatees to the payment of these counsel fees, among others: "(a) to Ruback and Albach, chief counsel in defense of the will $30,000.00, (b) to J. Harry O'Brien for services in defense of the will $17,000.00, (c) to Eugene J. Tarrant for services in defense of the will $12,000.00, (d) to Rudolph Schroeder for services in defense of the will $12,000.00, (e) to Isador H. Brand for services in defense of the will $7,500.00, (f) to Alfred A. Stein for services in defense of the will $3,500.00"; (5) a waiver of the duty of the trustee to account for his administration of the inter vivos trust in this language:
"The party of the first part do hereby declare and agree that the `Statement of Assets' filed by said Dougal Herr with the Appellate Division of the Superior Court of New Jersey (Docket A-690-53), sworn to on August 19, 1954, represents and shall constitute the account of said Dougal Herr as trustee inter vivos and they further consent and agree that no further accounting by him as such trustee inter vivos need be made, they and each of them hereby waiving all further accounting by him in his said capacity as trustee under the indenture of trust of October 1, 1937. They hereby further declare and agree that the said accounting shall at all times and for all purposes be deemed a full, true, accurate and final accounting of the trust inter vivos and shall not be subject to challenge or dispute."
The above matter is set forth to shed light upon the attitude of the residuary legatees and their attorneys, who seem to *361 have joined forces at all times with the executor in resisting the efforts of the respondents in their activities taken for the benefit of the estate. As to some of the foregoing, Justice Brennan made this comment:
"He put himself into a superior bargaining position as far as the ultimate beneficiaries are concerned, so that it would not be practical for any of them to contest his actions because in the exercise of his absolute discretion he had the power to `cut them off.'" In re Herr, 22 N.J., at page 299.
On October 6, 1955 the following minute was adopted by the Supreme Court:
"It is the sense of the Court that it is Judge Grimshaw's responsibility to take such action as he may conclude is necessary to protect the estate of Bertha Breckwoldt and that such action as he may conclude to take to that end shall not be withheld by him pending disciplinary action in this Court on the report filed herein but shall be pursued independently."
Following this, Mr. Major prepared an order to show cause why the executor should not be removed. It was entered on October 19, 1955. A hearing was held pursuant to this and the executor was removed on October 28, 1955. Mr. Monaghan was appointed substituted administrator c.t.a. on November 14, 1955, and Mr. Major was designated as his counsel. An appeal was taken from the order removing the executor and there were two appearances before the Appellate Division upon his application for a stay. Upon denial there, the application was renewed in the Supreme Court, and after oral argument was denied.
The agreement of April 27, 1955, mentioned above, came to light during the hearings in the disciplinary action and was brought to the attention of the Supreme Court in the report of Judge Grimshaw dated February 16, 1956. On March 1, 1956 the Supreme Court ordered Judge Grimshaw to examine into the facts and circumstances leading up to that agreement, the reasonableness of the counsel fees, and whether the officers of the respective corporate beneficiaries had the power and authority to execute it. A hearing was *362 held pursuant to this, and on May 8, 1956, Judge Grimshaw made a report to the Supreme Court. Following this report and the filing of exceptions by the attorneys whose fees were criticized therein, the Supreme Court on May 17, 1956 ordered that the matter be referred to Judge Grimshaw "for such proceedings as may be proper and necessary to protect the interests of the charitable trusts involved"; and it was "further ordered that Hon. Grover C. Richman, Attorney General, be designated to actively represent the charities in such proceedings." In the proceedings which followed, the attorneys for the residuary legatees renounced any claims they had for fees based on the agreement of April 27, 1955, and offered to return to the estate the fees already received by them under it, or such portion thereof as the court might direct. They also agreed that the court should determine what their compensation should be. It was announced at the hearing that Mr. Brand was renouncing any claim for services and was returning to the estate the sum of $3,750 paid to him under such agreement. Mr. Major spent four days on the hearing of this phase of the case. The court allowed counsel fees as follows: To Messrs. O'Brien, Tarrant and Schroeder, each $1,000; to Mr. Stein, $2,500. The former three have taken an appeal therefrom, as stated above. Mr. Major at the oral argument stated that he would serve in the appellate proceedings without further compensation.
The matter of the removal of the executor was argued in the Supreme Court on June 4, 1956 and re-argued on September 5, 1956 by Mr. Major.
The main argument for the appellants is directed to a straw man of their own invention. They allege that Mr. Major is seeking compensation from the funds of the estate for services rendered in the disciplinary proceeding, and then go on to argue that such is not proper. No one is contending here that there could be an allowance to counsel out of the decedent's estate for services in the disciplinary action. The order in question plainly provides that the compensation to Messrs. Monaghan and Major is for their *363 services to the estate. Some of the difficulty in this regard may have been created because in his affidavit of services Mr. Major included services performed in both proceedings. This is unfortunate. However, in it he evaluated all the services set forth at $25,000, and the fact is that he asked for an allowance of $10,000 from the funds of the estate and this was allowed.
The appellants concede that the respondents are entitled to some compensation for their services from the decedent's estate. Therefore, the issue resolves itself into the propriety of the amount of the allowances.
Judge Goldmann in In re Bloomer's Estate, 37 N.J. Super. 85, at page 94 (App. Div. 1955), after reviewing a number of cases dealing with counsel fees, said:
"Among other factors to be considered in fixing the allowance for legal services rendered the estate are: (1) the amount of the estate and the amount thereof in dispute or jeopardy as to which professional services were made necessary; (2) the nature and extent of the jeopardy or risk involved or incurred; (3) the nature, extent and difficulty of the services rendered; (4) the experience and legal knowledge required, and the skill, diligence, ability and judgment shown; (5) the time necessarily spent by the attorney in the performance of his services; (6) the results obtained; (7) the benefits or advantages resulting to the estate, and their importance; (8) any special circumstances, including the standing of the attorney for integrity and skill; and (9) the overhead expense to which the attorney has been put. In any case, the counsel fee allowed should never exceed reasonable compensation for the services rendered the estate. Although applications for counsel fees in estate matters are often presented on a per diem rate basis, or in terms of a percentage of the amount of the estate, such standards cannot be employed with justice to both sides."
In that case there was a remand to the trial court to take further proofs. When this had been done and the matter came again before this court on the propriety of the amount, it was held that "under all of the circumstances presented, and even though we might not have granted quite so much, in our judgment it cannot be said that the allowance shows a manifest misuse of discretion." In re Bloomer's Estate, *364 43 N.J. Super. 414, at 419 (App. Div. 1957); certification denied 23 N.J. 667.
In a later case, where the trial court allowed a counsel fee of $10,500 and disbursements of $4 upon an application for a fee of $15,000 and reimbursement of expenses of $1,269.16, this court affirmed and in the concluding paragraph of its opinion said,
"We cannot, however, resolve that there was an arbitrary misuse of discretionary authority by the supervising judge merely because we may believe that a larger allowance might also have been within the boundaries of reasonable justification." In re Tiene, 44 N.J. Super. 582 (App. Div. 1957).
There is in cases of this kind a substantial area within which there may be a reasonable difference of opinion.
Under all the circumstances in this case, it is our conclusion that the allowance to Mr. Major does not constitute a manifest misuse of discretion.
As to Mr. Monaghan, no assets have come into his hands. Therefore, he can have no commissions. As to compensation for legal services rendered by him, ordinarily there could be no allowance except on account settled. In re Whitford, 44 N.J. Super. 144, 149. However, since it is likely that no funds will come into his hands in view of the order of the Supreme Court dated July 10, 1956, it would serve no practical purpose to require him to file an account in order to obtain such allowance. We are of the opinion that upon the proofs the allowance of $1,000 to him for services does not constitute a manifest misuse of discretion.
The order of the Chancery Division is affirmed.