213 N.J. Super. 489 (1986)
517 A.2d 893
IN THE MATTER OF THE TRUST U/W OF HENRY TATNALL BROWN, DECEASED.
Superior Court of New Jersey, Law Division Burlington County, Probate Part.
Decided April 9, 1986.
August 20, 1986.[1]
*492 Blaine E. Capehart, New Jersey counsel to the Trust (Capehart & Scatchard, attorneys).
Robert L. Freedman, Pennsylvania Counsel to the Trust (Dechert, Price, & Rhodes, attorneys).
HAINES, A.J.S.C.

The First Opinion.
The trustees of the trust established under the will of Henry Tatnall Brown, deceased, are Robert P. Brown and Provident National Bank. They have filed their second intermediate accounting of the trust's financial transactions. New Jersey and Pennsylvania counsel apply for an allowance of fees as permitted by R. 4:42-9 and R. 4:88-4. The affidavits submitted indicate that services were rendered not only by counsel, but also by paraprofessionals, including a certified public accountant employed by the Pennsylvania firm, for whom separate fees are sought. This opinion denies fees to paraprofessionals, permits consideration of their services in the allowance of attorney's fees and analyses the method of calculating that allowance.
R. 4:42-9(a) provides: "No fee for legal services shall be allowed in the taxed costs or otherwise, except ... out of a fund in court." The trust estate before the court is a "fund in court." Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168-169 (1960). Subparagraph (b) of the rule provides in pertinent part that
... all applications for the allowance of fees shall be supported by an affidavit stating in detail the nature of the services rendered, the amount of time actually expended and a good faith estimate of time to be expended, the amount of the estate or fund, if any, the responsibility assumed, the results *493 obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by paraprofessionals, other factors pertinent in the evaluation of the services rendered, and the amount of the allowance applied for....
The comment in Pressler, Current N.J. Court Rules, to this part of the rule states:
The rule was amended, effective September, 1971, to add to the information to be included in the affidavit, the amount of the estate or fund, the responsibility assumed, the results obtained, the time spent by paraprofessionals (accountants, investigators and the like), and other pertinent factors. The purpose of the amendment was to provide a more accurate catalogue of the factors to be considered by the court in fixing the fee and to deemphasize the factor of the attorney's time spent, which is in itself often an unreliable guide but too often overemphasized by the court.
The rule allowing fees, while not expressly so stating, anticipates the allowance of a fee sufficient to cover the office overhead of attorneys together with a reasonable profit. That has always been the understanding. See, for example, Conover v. West Jersey Mtg. Co., 96 N.J. Eq. 441, 451 (Ch. 1924). Office overhead consists of all expenses incurred by an attorney in the operation of a law office, e.g., rent, insurance, salaries, assistants, supplies and utilities. The salary expense for paraprofessionals and accountants is overhead; it is not an expense for which an independent fee allowance may be made. Our rules allow fees for attorneys' services, not for services of persons who are not attorneys. Were the contrary true, it would be impossible to draw the line; fees could be allowed for legal secretaries, computer operators, bookkeepers, and employed experts in any field, all of whom might be defined as "paraprofessionals."
Paraprofessionals are identified here as qualified persons[2] who perform services under the supervision of an attorney which the attorney would otherwise be obliged to perform, e.g., preparing a tax return or reviewing an accounting for compliance with rules and statutes. Their use is to be encouraged. *494 They free attorneys for sophisticated work and lower the cost of legal services. Fee allowances should recognize not only the cost of paraprofessionals but also the risk and responsibility assumed by counsel when they are employed.
In appropriate cases fiduciaries are permitted to employ accountants, appraisers, real estate brokers and others who provide special services which the fiduciaries do not have the capacity to perform and the reasonable cost of those services may be allowed as an expense of the estate. In re Risica's Estate, 179 N.J. Super. 452, 455-456 (App.Div. 1981). In the present case, if the trustees had employed accountants to prepare their accounting, the cost would not represent an allowable charge against the estate since corporate fiduciaries are expected to have the capacity to prepare accounts. In re Bloomer, 37 N.J. Super. 85, 90-91 (App.Div. 1955) (quoting 6 N.J.Practice (Clapp, Wills and Administration) (1950) at 504, 453-454). The rule is long-standing. In Hagedorn v. Arens, 106 N.J. Eq. 377 (Ch. 1930), the court underlined the usual rule denying fees to bookkeepers or lawyers for keeping trustee's books or for preparing an account because these services were the responsibility of the fiduciary. It then asked:
What, however, is the fiduciary's work? Certainly work which is beyond the ordinary or reasonably to be expected skill and ability of such a fiduciary, cannot be deemed his work, and he will be entitled to obtain the skilled services of experts where necessary or advisable, and to have their compensation paid out of the estate; and indeed would probably be censurable, and perhaps personally liable, if he failed to do so. [At 383]
In Pyatt v. Pyatt, 44 N.J. Eq. 491, at 495 (Prerog.Ct. 1888), the court disallowed a request for "Counsel fee and making account  $15" because there was no breakdown between services of counsel and account preparation. Consequently, a law firm representing a corporate fiduciary, as here, cannot be paid for estate accounting services performed by accountants in its employ unless payment is charged against the fiduciary's commissions, i.e., paid by the fiduciary.
The New Jersey firm indicates that its lawyers have spent 11.04 hours, the Pennsylvania firm 21.25 hours and certified *495 public accountants (employees of the firm) 42.25 hours on this matter. They seek an allowance of $7,500 ($2,500 to New Jersey counsel; $5,000 to Pennsylvania counsel) for these services. A Pennsylvania partner's affidavit states: "In my firm, accountants' time is charged in the same manner as attorneys' time and represents a direct cost rather than an overhead item." The firm refers to its accountants as "a category of paraprofessionals." That definition is acceptable here. The accountant's work consisted of reviewing accounts, documents and pleadings, preparing drafts and discussing progress and problems with attorneys, all of which work counsel would otherwise have performed. The accountants' time is charged at the rate of $65 an hour in the analysis provided in the firm's affidavit. The various attorneys in the two firms charge fees apparently ranging from $75 to $175 an hour. The actual cost of the accountants' services is not provided.
In fixing counsel fees, hours spent by counsel and (for the purpose of assessing the value of risk and responsibility) hours spent by paraprofessionals are to be considered. The significance of hours (and rates) is discussed below. Pressler suggests that hours are "too often over-emphasized by the court." They are a primary concern but not a controlling one. All aspects of an attorney's work and responsibility must be considered and the importance of one factor over another will vary from case to case. For example, an attorney who solves a complex problem through an intellectual tour de force, made possible by her experience and high capacities, should be paid for those qualities and for that result regardless of time expended. An inept attorney who takes 50 hours to complete a task which a competent attorney would perform in 2 hours, must expect to have 48 hours of her services ignored. Some legal services involve substantial responsibilities and significant risks having nothing to do with time. These circumstances cannot be ignored when fee allowances are considered. R. 4:42-9(b) (repeated for convenience) therefore sets forth some *496 of the factors to be addressed in connection with fee applications:
Except in tax and mortgage foreclosure actions, all applications for the allowance of fees shall be supported by an affidavit stating in detail the nature of the services rendered, the amount of time actually expended and a good faith estimate of time to be expended, the amount of the estate or fund, if any, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by paraprofessionals, other factors pertinent in the evaluation of the services rendered, and the amount of the allowance applied for, and an itemization of disbursements for which reimbursement is sought.
Our Rules of Professional Conduct ("RPC") also list fee criteria. RPC 1.5(a) provides:
A lawyer's fees shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.[3]
In the present case, representation of the trust estate required the performance of some special services. Questions arose regarding the payment of certain medical expenses. Tax consequences attending a stock redemption plan designed to provide money for that purpose required research and advice. Otherwise, however, the services rendered to the trust during the period covered by the account were routine. The accounting itself was prepared by the Provident National Bank, one of the trustees. Counsel reviewed the accounting, prepared pleadings, exchanged telephone calls and correspondence, rendered advice, and attended conferences. The size of the estate may be a consideration since a large estate can attract more responsibility *497 than a small one. The assets are valued at $429,000 in round figures. They consist almost entirely of the stock of one corporation, a circumstance which could dictate special care if problems were present. The affidavits of service, however, do not disclose any "particular novelty or difficulty," or any problems involving the corporate stock, or any other factors affecting the requested allowances, except hours spent by attorneys and paraprofessionals. These hours (for both firms) total 32.29 for attorneys and 42.35 for paraprofessionals. There is no indication that the attorneys spent any time in supervising the paraprofessionals. The fact that their cost is not disclosed does not matter. That cost is overhead, to be recovered by counsel as part of the fee allowance and not to be separately stated. The requested fees are $2,000 for New Jersey counsel and $5,500 for Pennsylvania counsel ($2,400 of which has been paid), plus out-of-pocket expenses.
Except for hours and rates, fee criteria (as suggested, for example, in R. 4:42-9(b) and RPC 1.5(a)) are notably imprecise. Hours themselves, while reflecting numerical precision, are not models permitting exact calculations. Time-keeping methods may produce varied results; hours spent on particular work may be excessive or, as the result of skill and efficiency, may be the opposite. Rates depend upon counsel's own practice, experience, skill and estimate of worth, plus, in most cases, the court's sense of current charges to clients. Hours and rates, however, provide the only measures permitting comparison and a degree of uniformity while assuring attorneys an adequate return upon what Abraham Lincoln referred to as their "stock in trade"-time. The only certain alternative, a fixed percentage of the gross estate, produces arbitrary results having nothing to do with reasonableness, In re Bloomer, 43 N.J. Super. 414, 416-417 (App.Div. 1957), the test courts have always applied in fee disputes. In re Bloomer, supra, 37 N.J. Super. at 94; RPC 1.5(a).
*498 Attorneys today commonly base charges to clients upon a formula of hours multiplied by rates. For many years, management experts have insistently counselled lawyers in every jurisdiction to maintain time records for the purpose of billing clients appropriately. See, for example, Gerhart, "Art of Billing," L.Off.Econ. & Mgt. 1:29 (May 1960); Strang, "Time & Money Records," JBA Kan. 28:400 (May 1960). Firms hiring new lawyers sometimes require them to produce a minimum number of "billable hours" per year. Our own fee rule, R. 4:42-9(b), requires the keeping of hours. Consequently, this opinion, perhaps in disagreement with Pressler, concludes that hours and hourly rates are the essential beginning criteria when fixing fees in most probate matters.
Our Appellate Division, without saying so specifically, used this approach to fees for probate counsel in In re Estate of Seabrook, 127 N.J. Super. 135, 146-148 (App.Div. 1974). In re Bloomer, supra, 37 N.J. Super. 85, and its companion, In re Bloomer, supra, 43 N.J. Super. 414, may be read as advising a contrary approach. The court, in the latter case, said: "The fixing of counsel fees is notoriously a matter of great delicacy and difficulty. No yardstick is available for the purpose; no standard percentages or per diem rates can be recognized which would be fair to both parties in all cases." 43 N.J. Super. at 416-417. The instant opinion does not disagree with that thesis; it simply emphasizes the importance of hours and rates as the correct beginning point when considering factors involved in the calculation of reasonable fees.
Cases providing an analysis of fee applications in probate settings are surprisingly scarce. None of the pre-1947 cases cited in 6 N.J.Practice, supra, § 1546, offer analytical assistance. Since 1947 only In re Bloomer sets forth criteria, criteria which forms the basis of R. 4:42-9(b). This circumstance results in part from the fact that our appellate courts do not usually fix fees; they pass upon the propriety of fees fixed by trial courts, determining whether an allowance below shows "a manifest misuse of discretion." In re Bloomer, supra, 43 *499 N.J. Super. at 419; In re Breckwoldt, 45 N.J. Super. 357, 363-364 (App.Div. 1957). When fees are fixed by an appellate court, any analysis of the fee issue is likely to be succinct. Typical is In re Bumsted, 1 N.J. 386 (1949), in which the following constitutes the total analytical language: "Upon an examination of the record in the cause we are of the opinion that the fee is excessive and should be reduced to the sum of $10,000. The remaining counsel fees were proper and were correctly charged against the fund." Id. at 397-398. Even in In re Bloomer, where care was taken not only to set forth criteria but also to provide a listing of the services performed by counsel, no application of criteria to services is made in any specific way. Breckwoldt approved fees without any analysis while quoting the Bloomer criteria. The Seabrook court, which reduced the trial court's $200,000 fee allowance to $135,000, did not refer to the criteria set forth in Bloomer or to those set forth in our fee rule and did not set forth its route to the $135,000 conclusion. After addressing a breakdown of hours expended and commenting on the overlap of lawyer and executor services, the court said: "We conclude that a fair valuation of the services of counsel in this administration is $135,000, and the award of counsel fee is modified accordingly." In re Estate of Seabrook, supra, 127 N.J. Super. at 148.
The Seabrook court's concentration upon hours supports the present approach. After discussing a dispute as to the number of hours devoted by counsel to legal services, the court said:
The $200,000 counsel fee allowed below breaks down to $270 per hour on the basis of 740 hours and $382 per hour on the basis of 523 hours. In our judgment, even the smaller rate is clearly excessive for ordinary legal services attendant upon an estate administration not involving any significant litigation, if any at all. [Id. at 147]
It is significant that R. 4:42-9(b), which sets forth the required contents of an affidavit of services and thus provides some of the criteria to be used in fixing fees, applies to all actions in which fees are allowable. It suggests the same fee criteria for consideration in family actions, actions involving a fund in court, probate actions, mortgage foreclosures, tax certificate *500 foreclosures, actions upon insurance policies, civil rights litigation and other cases in which the allowance of counsel fees is permitted by rule or statute. Consequently, guidance in the present matter may be obtained by looking at fee cases in non-probate settings.
Singer v. State, 95 N.J. 487 (1984), is illustrative. This was a civil rights case involving an application for fees under a federal statute, the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988. Our Supreme Court, side stepping the 12 fee criteria set forth in Johnson v. Georgia Hwy. Express, 488 F.2d 714 (5th Circuit 1974) (which are similar to those set forth in our fee rule) said:
Generally, a simpler and more straightforward approach in determining the reasonableness of attorneys' fees has evolved that has met with the approval of an apparent majority of jurisdictions. The most useful starting point for determining the amount of a reasonable fee noted by the Supreme Court itself, Hensley v. Eckerhart, supra, 461 U.S. [424] at [433], 103 S.Ct. [1933] at 1939, 76 L.Ed.2d [40] at 50, [1983] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This arithmetic result or "lodestar" may then be adjusted upward or downward to reflect any of those factors articulated in Johnson v. Georgia Highway Express Inc. supra, and any other considerations that are deemed relevant by the court in the exercise of its sound discretion in light of the objectives of the Awards Act. Hughes v. Repko, 578 F.2d 483 (3d Cir.1978) (adjustments to amount of counsel fees may be made to reflect the quality of the attorney's work, the complexity of the issues presented and the contingent nature of success); see also Lindy Bros. Builders, Inc. v. American Radiator Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973) (Lindy I). Obviously, even under this approach, considerable discretion must be applied in determining both the reasonableness of the hours expended and the hourly billing rate. [95 N.J. at 499; emphasis supplied]
Singer, therefore emphasized, as here, the central role of hours and rates in fixing fees. It also said: "The rates to be applied should be those that would be charged by an adequately experienced attorney possessed of average skill and ordinary competence  not those that would be set by the most successful or highly specialized attorney in the context of private practice." Id. at 500. Fee allowances in probate matters require the same approach. Bung's Bar and Grille v. Florence Township, 206 N.J. Super. 432 (Law Div. 1985), illustrates hours multiplied by *501 rates fee calculations; it also analyses Singer and later civil rights cases, all of which rely upon like procedures in fixing fees. It is the approach adopted here for the purpose of reaching a standard of reasonableness.
The use of hours and rates as the important measures of a reasonable fee is as fair as it is inevitable. In ordinary probate matters these are the significant considerations. When probate matters are complex, time and rate mark only the beginning concern. The hourly rate must be a figure which provides attorneys with a return for their services sufficient to cover reasonable office overhead and a reasonable profit. It is calculated by (1) taking the basic, reasonable rate for ordinary probate work and (2) adjusting it when other factors suggested by our rules and our cases are present. Thus, an exceptional result or a novel issue may increase the rate while a poor result or unnecessary services do the opposite. The attorney who spends five hours of research looking for a definition of "testator" must expect to have those hours disregarded. The same is true of the attorney who expects compensation for non-legal efforts, e.g., consoling a bereaved spouse or designing a tombstone. Carefully drawn affidavits of service are obviously necessary to permit all factors to be addressed.
Here, the requested fee, measured by the hour, would produce a rate of about $230, ($7,500 divided by 32.29, the total attorney hours) $55 an hour more than the highest paid lawyer (who spent only three hours on the present matter) in either applying firm. The estate, on the basis of the affidavits of services filed by counsel, offers so little in out-of-the-ordinary legal problems as to make an extra fee allowance inappropriate. On the other hand, there is nothing to indicate that the hours expended are unreasonable or that a diminished hourly rate should be imposed. Services involving a time expenditure of 42.35 hours were provided by paraprofessionals, a circumstance to be considered in fixing counsel fees by reason of the risk and responsibility assumed in this connection, as well as the fact of such employment. No paraprofessional fee, as such, is allowable. *502 The total lawyer time expenditure of 32.29 hours must be multiplied by a reasonable hourly rate, fixed by considering all applicable factors, beginning with the basic, reasonable and ordinary rate charged for routine probate work. Since the use of paraprofessionals is to be encouraged, it may be desirable, if permitted, to make a separate allowance for the responsibility, assumption of risk and employment of these persons, treating such employment as a unique factor in the approach to fees. On the other hand, it may be better to reflect this overhead expense in the hourly rate to be applied, a traditional approach. In any event, counsel fees will not be fixed until the court has been provided with additional information.
Much that has been said in this opinion is new. The approach to probate fees which it suggests has not been exposed to counsel or to the bar generally. The following is therefore directed:
A. Counsel shall file additional affidavits of service setting forth:
1. Their view of the basic, reasonable and ordinary hourly rate which should be applied in this matter, on the assumption that the estate has required only ordinary services with respect to hours spent by attorneys (not paraprofessionals) and the manner in which that hourly rate is calculated. Additional affidavits providing expert opinions as to appropriate rates may also be filed.
2. On the assumption that this is not an ordinary estate, all factors which the court should consider in adjusting the rate upward or downward, the amount of such adjustment and the manner in which that amount is calculated. This assumption must be supported by supplemental affidavits setting forth facts which underline all unusual services by attorneys and paraprofessionals.
3. Hours spent by attorneys in the supervision of paraprofessionals, if not included in the figure of 32.29 hours previously supplied.
4. The hourly cost of paraprofessionals to the law firms employing them.
B. Counsel shall file briefs addressing the following:
1. The meaning of the term "locality" in RPC 1.5(a)(3), which lists as one criteria to be considered in fixing fees, "the fee customarily charged in the locality for similar legal services." For example, does Philadelphia custom or Burlington County custom apply here in the case of Philadelphia counsel?
2. How should basic hourly rates for ordinary services be fixed? Is expert testimony necessary, assuming the fee application is not contested? Will opinion affidavits from independent experts suffice? Can a periodic survey provided by a local bar association be used by a court for guidance?

*503 3. How should the services of paraprofessionals be considered when making fee allowances?
4. Any other issue involved in this proceeding which, in counsels' opinion, deserves argument.
C. Amicus briefs are welcome.
D. Affidavits and briefs shall be filed with the court no later than May 12, 1986.
E. All issues will be argued on May 16, 1986 at 9:00 a.m.

....

The Second Opinion.
This opinion disposes of the issues raised but not decided in the first opinion. Counsel responded to the prior directions of this court by filing additional briefs which addressed only the questions of "locality," hourly rates and paraprofessionals. No further affidavits of services were supplied. No amicus briefs were offered. The matter was submitted on the record.

A. Locality.

RPC 1.5(a)(3) provides that one factor to be considered in determining a reasonable fee allowance is "the fee customarily charged in the locality for similar legal services...."
The calculation of the fee commences with the determination of the basic reasonable rate charged by a competent attorney for ordinary work. That rate is then increased or decreased through a consideration of other factors suggested by our rules and decisions if such factors are present. One of those factors, "locality," has never been defined in our cases.
Counsel for the estate are located in Philadelphia, Pennsylvania and Moorestown, Burlington County, New Jersey. Counsel argue that their office locations constitute the "locality" to which the RPC refers:
The business nexus of the Brown estate is Philadelphia, Pennsylvania. While the decedent resided in Moorestown, his business interests were in Philadelphia. His business, Brown & Baily Company, referred to in his will, was Philadelphia based. His will was drawn and witnessed by Philadelphia counsel, W. Nelson L. West, Esq. He designated a Philadelphia bank, Provident Trust Company, as substituted executor and trustee of his estate and that bank is a co-trustee *504 thereof. A reading of decedent's will demonstrates his intention that the stock of that company or any succeeding company (now Tatnall Corporation) be retained for the benefit of his wife and family. It can be reasonably assumed that this intelligent and successful Philadelphia businessman paid his Philadelphia lawyer Philadelphia rates for the services which he performed. He obviously expected to pay Provident Bank Philadelphia rates for its services. Decedent's sons, who were co-executors and co-trustees of his estate and who resided in Pennsylvania, had to approve the retention of Philadelphia counsel to represent them and could expect to pay Philadelphia rates for their services. In our experience it is a fact that fees commanded and charged by attorneys in the larger cities are greater than those charged in smaller cities and other areas. This is based on the recognized fact that rents, salaries and overhead costs are greater in the larger cities and persons engaging counsel in larger cities expect to pay accordingly. Thus the Brown estate can be expected to pay Philadelphia counsel Philadelphia rates and New Jersey counsel South Jersey rates. Significantly, no party in interest has objected to the amount of the allowances which have been requested.[1]

(1) The County of Jurisdiction.

Counsel's argument is examined first in the light of countervailing considerations.
It is not unreasonable to suggest that Burlington County constitutes the "locality" in question. This is the jurisdiction in which the trust is being administered. Reasonable fees customarily charged by Burlington County attorneys are within the knowledge of Burlington County judges; they frequently consider fee applications of local attorneys. The same judges cannot be knowledgeable as to reasonable fees customarily charged by attorneys in other jurisdictions; their fee applications are scattered and less frequent. The principal difference, if any, in the basic reasonable rates charged in different jurisdictions is a difference in overhead. Our rules, however, make no reference to the cost of operating a law office. The happenstance of an attorney's geographical locale should not dictate *505 the amount of a reasonable fee. It is the local area over which the court has jurisdiction that must control. If it does not, rate differences will vary wildly, and will be very difficult to control. A Burlington County decedent is presumed to know that jurisdiction over his estate resides in a Burlington County court knowledgeable about Burlington County rates and services.
These are inviting arguments. They are not, however, as compelling as the alternative: defining "locality" as counsels' office location.

(2) Counsels' Office Location.

The recognition of counsel's office location as the "locality" in question is the better choice. The arguments in favor of the county of jurisdiction are not entirely convincing. While the judges of that county are familiar with local fees, knowledge of foreign fees is not beyond their command. We do not have a parochial court system. While our rules do not mention law office costs, such costs have been allowed as part of a reasonable fee from time immemorial. Conover vs. W. Jersey Mtg. Co., 96 N.J. Eq. 441, 449 (Ch. 1924) The fact that rate differences will result from the use of office location as the "locality" is not objectionable: it is fair to counsel and expected by clients.
Treating the "locality" as the county of jurisdiction creates unacceptable problems. Only the local bar would be comfortable with so restrictive a rule. Counsel in other locations, though selected by their clients, would be reluctant to represent them; they would be unfamiliar with the rates in the "locality" and uncertain of being paid the reasonable rate to which they have been accustomed in the area in which they work. Overhead differentials produced by different office locations, whether up or down, would be ignored. The right of local citizens to select their own counsel would be unduly burdened. Our courts, though operating under a statewide system, would be obliged to deal with the different tariff barriers of 21 counties. Finally, it must be remembered that *506 the rate to be fixed is the basic reasonable rate charged by a competent attorney for ordinary services. This should not be difficult to establish; it will vary statewide primarily on the basis of overhead. "Locality" is therefore defined here as counsels' office location.
Counsel practicing outside the county of the court's jurisdiction seeking fees based upon more than the local rate must provide information satisfactory to the court (meeting evidential standards) showing that the rate is reasonable in the locality of such counsel's office[2a] is located. Otherwise, the rate in the county of the court's jurisdiction will be employed. The requirement for satisfactory evidence is noted in Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984):
In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence  in addition to the attorney's own affidavits  that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to  for convenience  as the prevailing market rate. [at 896, n. 11, 104 S.Ct. at 1547 n. 11]

B. The Reasonable Rate.

The court, based upon its own knowledge and experience, finds that the basic, reasonable hourly rate charged by competent attorneys in Burlington County for ordinary probate services is from $90 to $100.[3a] A rate of $95 is adopted for present purposes.
*507 No definitive New Jersey opinion has been found authorizing the court to use its own knowledge when fixing attorneys fees. It is common practice, however, for the courts to do so. In a typical probate case involving a fee application, the usual proofs upon which a court must base a reasonable fee consist only of an affidavit of services made by the attorney requesting the fee allowance. Our rules require no more. The power of a court to decide whether a fee is reasonable, based upon its own knowledge and experience, must flow in part from the obligation which court rules impose upon judges to pass upon the reasonableness of fees and upon the expertise that judges have acquired through their mandatory education in the law and their minimum of ten years experience at the bar before they can become judges. N.J. Const. (1947) Art. VI, § 6, par. 2. Furthermore, the court has "inherent power to pass upon the reasonableness of fees charged in connection with any matter before it...." In re Estate of Kish, 52 N.J. 454, 472 (1968). Our equity courts have always had the power to adjudicate attorney-client fee disputes. In re LiVolsi, 85 N.J. 576, 588-590 (1981). Numerous foreign jurisdictions have recognized the right of a court to consider its own knowledge when fixing fees.
In Powell v. Penna. RR Co. 267 F.2d 241 (3 Cir.1959) the court, quoting from 7 C.J.S., Attorney and Client, § 191d at 1093 said:
While expert testimony, as to the value of an attorney's services, is admissible and should be given due weight, it is not conclusive either on the jury or the *508 court, or, in case of appeal, on the appellate court, since the court, either trial or appellate, is itself an expert on the question, and may consider its own knowledge and experience concerning reasonable and proper fees, and, in the light of such knowledge and experience, the court may form an independent judgment, from the facts or evidence before it, as to the nature and extent of the services rendered, and make an appraisal of such services and determine the reasonable value thereof, either with or without the aid of the testimony of witnesses as to value. [at 245]
In Blank v. Talley Industries, Inc., 390 F. Supp. 1 (S.D.N.Y. 1975) the court said:
A court is presumed to be knowledgeable as to fees generally charged by attorneys and the quality of services rendered in the matter; equally it may be presumed to be knowledgeable as to the reasonable time and the number of attorneys required to perform services competently and effectively in furthering the success of a litigation. [At 4]
See also Securities and Exchange Comm. v. Kelly, Andrews & Bradley, Inc., 423 F. Supp. 645, 646 (S.D.N.Y. 1976). In Lindy Bros. Builders Inc. v. American Radiator and Standards Sanitary Corp., 487 F.2d 161 (3d Cir.1973) the court said:
Courts have noted that expert testimony is not necessary to establish the value of a lawyer's services and have, on that ground, sanctioned the award of attorneys fees on the basis of affidavits without a hearing. A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers. [at 169]
In McAvoy v. Harron, 275 N.Y.S.2d 348 (1966) the court said:
Plaintiffs expert witness valued such services at $30,000. While his testimony was admissable and should be given due weight, it is not conclusive on the court since the court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and in the light of such knowledge and experience the court may form an independent judgment from the facts and evidence before it as to the nature and extent of the services rendered, make an appraisal of such services and determine the reasonable value thereof. [275 N.Y.S.2d at 350-351]
Other cases are collected in 7A C.J.S., Attorney and Client, § 329. These authorities are persuasive. Their reasoning is adopted here.
No information has been provided contradicting this court's opinion that the services rendered in connection with this trust were ordinary, although opportunity was given for the presentation *509 of additional facts. Consequently, the $95 rate is to be used in calculating the allowances to counsel, increased, however, by any adjustment for the use of paraprofessionals.

C. Paraprofessionals.

Counsel were invited to respond to the question: "How should the services of paraprofessionals be considered when making fee allowances?" They did so, claiming that many firms bill clients for these employees, that many clients encourage, and sometimes insist upon, the use of paraprofessional personnel in order to economize on legal costs and that separate billing for paraprofessional services on an hourly basis is common. No material, except the brief and the Andersen Report, supra, which merely indicates that 47% of large firms bill over 50% of their clients for "legal assistant time," supports these contentions. Neither is evidential. It is nevertheless agreed, as stated in the prior opinion, that the use of paraprofessionals should be encouraged and that a reasonable allowance should be made to attorneys, when fixing fees, to cover the risk and responsibility attending their employment. It is not appropriate to allow a separate fee for such services, although I suggested that alternative. Such an allowance, is not permitted by our rules. The reference in R. 4:42-9(b) to paraprofessional services merely indicates that such services should be considered when establishing fees for lawyers. The cost of these services is overhead.[4] It should be reflected in the reasonable hourly rate used as a beginning point in the fee *510 analysis. There is nothing in the record to indicate that such is not the case. Consequently, I conclude that paraprofessional costs are not entitled to any further consideration. The $95 figure represents the final rate.
Fees are therefore allowed as follows:
Capehart & Scatchard  $1,050 ($95 X 11.04 hours, rounded).
Dechert, Price & Rhoads  $2,020 ($95 X 21.25 hours, rounded).
NOTES
[1] This matter has been addressed on two occasions, requiring two opinions in order to make a final disposition of the issues. They are presented here in self-explanatory sequence.
[2] We have no standards for paraprofessionals and have never defined the term. A rule would be helpful.
[3] It would seem advisable to reconcile this RPC with R. 4:42-9(b).
[1] These "facts" are set forth in a brief. They have no evidential support and are recited here only for the purpose of illustrating possible arguments relating to "locality." It may be noted that it has always been the duty of the courts to "supervise and closely scrutinize trust accounts" regardless of the absence of objections. Conover v. W. Jersey Mtg. Co., 96 N.J. Eq. 441, 445 (Ch. 1924)
[2a] A compilation prepared by a bar associate which complies with the rules of evidence would be very helpful.
[3a] Counsel provided the court with Arthur Andersen & Co., Report of the Legal Economics Survey of New Jersey Law Firms (1985) No evidence was presented to support its inclusion in the record and no decision is made as to whether it meets evidential standards. It is mentioned in this footnote only for illustrative purposes. The report indicates that, with respect to small firms (two to five lawyers), 30% charge hourly rates between $71 and $90 for partners while 62% bill associates' services at that rate; 52% of the small firms charge between $91 and $125 while 11% bill associates at that rate. With respect to large firms (over five lawyers) 17% bill partner's time at that rate; 44% bill partner's time at $91 to $125 while 21% bill associates' time at that rate, and 32% bill partner's time at $126 to $150. Neither large nor small firms bill associates at rates higher than $125. The majority of the firms, whether large or small, charge rates between $91 and $125. The report does not mention probate services, is presented on a statewide basis and does not refer to Philadelphia. Its data on charges is based upon the size of firms, a factor not among the fee criteria contained in our rules. It could not be used for present purposes, even if it were admissible in evidence.
[4] The information in the Andersen Report, supra, while not useable here for reasons stated and not evidential, illustrates the problem of a separate charge for paraprofessional services. It indicates that many firms of all sizes make separate charges to clients for computerized legal research, other computer time, travel costs, secretarial time, long distance telephone, postage, duplicating and word processor operator time. There is no difference between these items traditionally considered to be overhead and the costs of paraprofessionals. It has never been the practice to make separate allowances for any of these items when allowing fees to attorneys.