24 N.J. Super. 228 (1952)
93 A.2d 644
WALTER H. GARDNER, AND CAROLINE GARDNER, INDIVIDUALLY AND ON BEHALF OF THE STOCKHOLDERS OF THE CLIFTON TRUST COMPANY, PLAINTIFFS,
v.
ROMANO P. BALDI, ET ALS., DEFENDANTS. IN THE MATTER OF THE VOLUNTARY DISSOLUTION OF THE CLIFTON TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Chancery Division.
Decided December 19, 1952.
*230 Messrs. Gardner & Williams (Mr. John F. Crane appearing), attorneys for Walter H. Gardner and Caroline Gardner and exceptants.
*231 Messrs. McCarter, English & Studer (Mr. Augustus C. Studer, Jr., appearing), attorneys for the liquidating trustees of the Clifton Trust Company.
Messrs. Cole, Morrill & Nadell (Mr. Mendon Morrill appearing), attorneys for John Celentano and Susan Celentano, Henry L. Peto, Alfred C. Sinn, Louis Rudbart, Lila Rudbart, Gustav Triebel, James M. Dunn, Peter Wilkovsky, Julia Wilkovsky and Henry A. Franz, beneficiaries of the trust concerning which an intermediate account was filed by the trustees.
GRIMSHAW, J.S.C.
This matter is before me on exceptions to the intermediate account of the trustees in dissolution of the Clifton Trust Company. The exceptants object to the granting of allowances to the trustees. They take exception to the payment of $54,000 to the tax expert who participated in the dissolution proceedings. And they charge that the trustees, by an improper use of the bank's assets, made a secret profit from purchases of the preferred stock of the bank, for which profit they claim the trustees should be surcharged.
On April 22, 1949 the Clifton Trust Company executed an agreement with the First National Bank and Trust Company of Paterson, under the terms of which the Paterson bank agreed to purchase the assets of the Trust Company and assume its liabilities. Among the provisions of the contract was one providing for the dissolution of the Clifton Trust Company upon the consummation of the agreement.
Among the assets of the Clifton Trust Company were 2,203 of the 2,500 shares of the First National Bank of Clifton. On April 22, 1949 the First National Bank and Trust Company of Paterson executed an agreement with the First National Bank of Clifton for the purchase of its assets. The contract was similar to the one entered into by the Clifton Trust Company.
Following the execution of the contracts the trustees in dissolution of the Clifton Trust Company, its former *232 directors, were confronted with the problem of carrying out the terms of the agreement in such a manner as to insure a minimum assessment of capital gain taxes by the Federal Government. To aid them, the trustees called into consultation Mr. Sydney A. Gutkin, a member of the bar of this State and a well-known expert in the field of federal taxation. Mr. Gutkin prepared a plan for the liquidation of the two Clifton banks which, when carried into execution, resulted in a tax saving of $200,000.
Thereafter, Mr. Gutkin submitted a bill for $56,000 which, after some negotiations, was reduced to $54,000. On December 16, 1949 the bill was paid. On the same day the trustees paid to their general attorneys the sum of $15,000 and to themselves the sum of $2,400, or $200 for each trustee, there being 12 of them. None of these payments was submitted to the court for its approval.
In the account now submitted for consideration, allowance is sought by the trustees for those payments. They also seek additional allowances for themselves totalling $33,600, and a further fee of $5,000 for their attorneys.
The exceptants have raised no objection to the fees paid by the trustees to their general counsel. They do question the amount of the Gutkin payment. And they resist the application of the trustees for allowances.
Trustees, of course, are entitled to the advice and help of counsel in the performance of their duties. However, before payment is made to counsel for services rendered, the proper practice is to submit the matter to the court for its approval of the amount to be paid. In making payments of counsel fees without the court's consent, the trustees acted at their peril. To the extent that the court should find the payments to be excessive, the trustees exposed themselves to a surcharge. In re Babcock, 112 N.J. Eq. 374 (E. & A. 1932).
In considering the value of the services rendered by counsel, the court takes into consideration the legal ability of the attorney, the amount of work which he does, the *233 skill with which he does it, the success of his efforts and the amount involved. Soper v. Bilder, 87 N.J. Eq. 564 (Ch. 1917). Mr. Gutkin is an expert in the field of taxation. His experience has been great. The work which he performed for the trustees, upon which he spent some 400 hours, was performed expeditiously and efficiently. The result was a tax saving of $200,000 to the trust estate. For his work he received a payment of $54,000.
The reasonableness of the payment being attacked, the burden of sustaining its propriety was on the accountants. In re Atkinson's Estate, 86 N.J. Eq. 173 (E. & A. 1916). Two experts were called, one by each side. The accountants' expert testified that the Gutkin charge was reasonable. The exceptants' expert stated that the reasonable value of the services rendered was $32,000. I am of the opinion that, as is frequently the case, there was an underestimation of the value of the services by one expert and an overestimation by the other. In such a situation the court is thrown upon its own resources. Therefore, having in mind the various elements to be considered when evaluating the services of an attorney, I have concluded that the payment to Mr. Gutkin was excessive, and that a reasonable fee for his services is the sum of $40,000.
The payment of $2,400 by the trustees to themselves without court approval was highly improper. They are entitled to no compensation until their account has been allowed. Wyckoff v. O'Neil, 72 N.J. Eq. 880 (E. & A. 1907). I realize, of course, that their action was prompted by a desire to deduct the various payments from the 1949 income of the trust estate. That desire, however, did not provide justification for their action and cannot be passed over without comment.
The record shows that the trustees, with the exception of Mr. Rittenhouse, performed practically no services other than to sign their names to the various documents by means of which the transfer of assets was effected. Their work began and ended within the space of one day. Any problems *234 which arose thereafter were left for solution by counsel who received some assistance from Mr. Rittenhouse.
The record does not justify a total allowance of more than $500 each to the individual trustees, with the exception of Mr. Rittenhouse. He, in my opinion, is entitled to be compensated to the extent of $2,000. Therefore, the trustees will be allowed the sum of $7,500 which will be divided as indicated above and will include payments already made and from which will be deducted the amount already paid.
Although no objection was raised to the request of counsel for an additional allowance, I am of the opinion that an allowance of $1,500 in addition to the amount already received by them is ample compensation for the services so far rendered.
The burden of sustaining the charge of self-dealing on the part of the trustees was upon the exceptants. They have not borne that burden successfully. The testimony was that in 1944 the directors of the bank decided to buy up fractional shares of the preferred stock which, they felt, constituted an expense to the bank. An account was established into which the directors paid varying amounts from time to time. With the funds thus accumulated, the stock purchases were made. The practice was discontinued when the contract with the First National Bank and Trust Company was signed. It is this action to which the exceptants object.
Even if we disregard the reason given for the establishment of the stock purchase arrangement, a reason borne out by the testimony, the arrangement was in no sense improper. A director of a corporation is not, because of his office, in duty bound to disclose to an individual stockholder, before purchasing his stock, that which he may know as to the real condition of the corporation affecting the value of that stock. He is not a trustee for the stockholders with respect to their several holdings of stock over which he has no control. Crowell v. Jackson, 53 N.J.L. 656 (E. & A. 1891); Connolly v. Shannon, 105 N.J. Eq. 155 (Ch. 1929), affirmed *235 107 N.J. Eq. 180 (E. & A. 1930). The exception will be dismissed.
Judgment in accordance with the views expressed above.