765 A.2d 260

GEORGE MEARS, PLAINTIFF, v. EILEEN ADDONIZIO AND ROBERT WILTSIE, DEFENDANTS, AND GEOFFREY MEARS, DEFENDANT–RESPONDENT, AND THE FLEET BANK, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 19, 2000—Decided January 22, 2001.

Before Judges CIANCIA, ALLEY and BILDER.

*Angela White Dalton* argued the cause for appellant (*Foss, Bowe, San Filippo & Caruso*, attorneys; *Ms. Dalton*, of counsel and on the brief).

*David E. Shaver* argued the cause for respondent (*Broege, Neumann, Fischer & Shaver*, attorneys; *Mr. Shaver*, of counsel and on the brief).

The opinion of the court was delivered by

ALLEY, J.A.D.

Fleet Bank appeals the July 23, 1999, order of the Chancery Division which denied its application requesting approval of payment to it as trustee of certain attorneys' fees and commissions out of trust assets. The Bank and its predecessor banks have served since 1968 as the trustee under a Trust Agreement created by Geoffrey Mears. Several years ago, Geoffrey Mears employed a housekeeper, Eileen Addonizio, who in early 1998 came under suspicion of attempting to exercise undue influence over him and trying to become the object of his donative wishes.

George Mears, the son of Geoffrey Mears, brought this action against Addonizio and joined the Bank as a defendant to prevent Addonizio from carrying out her alleged plan. The parties eventually settled the litigation and the Bank applied for approval of its commissions and attorneys' fees. George Mears joined the Bank as a formal party, but it was not then the object of allegations of wrongdoing.

This appeal arises from the Chancery Division's denial of the Bank's application seeking the court's approval of payment to it of $19,067.43, which the Bank had already paid to itself from assets of the Trust. This total included requested trustee commissions of $2,904.74. The Bank requested the balance of $16,762.69 for attorneys' fees it incurred, much of it for the litigation. The Bank's application was opposed by Geoffrey Mears, who died in October 1999, after the court rendered its decision on the application.

## I

In its oral decision on July 23, 1999, the court stated,

Fleet Bank took the position early in the case through its counsel, which was the correct one .. under the circumstances, that its obligation was to preserve the assets of the trust and await the determination of the disputes that have arisen between plaintiff, Mears, the younger[,] and defendant Mears, the elder, and Eileen Addonizio, the defendant who was ... allegedly unduly influencing the elder Mr. Mears.

It found the Bank took "no position with respect to the control dispute, which was whether the older Mr. Mears was being unduly influenced," and the Bank "was just sitting back waiting for the conclusion as to that."

The court noted that although "[o]ne would have thought that that would have been the end of Fleet Bank's serious involvement in this case . . . ," the Bank, "during the life of this case thereafter, incurred approximately nineteen or $20,000 worth of counsel fees, which it now seeks to have paid from the trust. . . . " The court described as follows the two-part objection interposed to this fee request: (1) "the trust instrument does not permit for the pay-

ment of such fees, according to its very terms," and (2) "even if it did," it was "inappropriate for ... [the] Bank to incur such extensive legal fees in a case where it essentially should have been sitting on the sidelines waiting for the smoke to clear."

With respect to the first objection, the judge noted that, under the terms of the trust instrument, the Bank was "entitled" to employ attorneys "for the administration of the trust estate." He found, however, that "in light of the peculiar circumstances of this case," the Bank had employed attorneys to engage in "litigation beyond the administration of the trust estate," in that the Bank was named as a party in plaintiff's litigation simply "because it is the trustee" and "holding the funds that were the res" that plaintiff, defendant and Addonizio were "fighting over." He concluded that the Bank was not administering the trust estate but rather "merely monitoring this litigation."

With respect to the second objection, the court concluded, "even if it could be determined that the trust should bear the fees of Fleet Bank pursuant to the provision of the trust instrument," it was "unreasonable" for the Bank "to incur possibly close to $20,000 in fees" for "a dispute that really does not involve them," and is "... not the trust's problem." "While it might have been fair and reasonable for the Bank ... [to] have appeared initially, to determine exactly where the case was going, and to state its position," the court indicated that it could not endorse a course of conduct in which the Bank "would have continued to expend so much time and energy on this case," by being "involved every step of the way." He saw "no apparent reason" for the Bank having done so, "considering its neutral position in the case."

Addressing the efforts of the Bank's attorneys, the court noted that although there was "no question and no doubt that the law firm did in fact do the work," the Bank must pay its own attorneys' fees in this litigation. The essence of the court's ruling was as follows:

Fleet should bear its own fees. It was not open season on this trust, to hire an attorney and to direct that attorney to so deeply immerse themselves in this action,

that there would be in excess of 100 hours lawyer time invested in this matter, for the situation that merely required the monitoring of the litigation in the most superficial way, to simply await any direction from the Court as to what should happen with the trust.

So, for those reasons I find that the fees of the law firm will have to be borne by Fleet Bank. That is a matter between the law firm and Fleet Bank. They are not to be borne by the trust.

I understand that contrary to prior order, Fleet Bank already helped itself to the payment of a portion of those fees. Those should be reimbursed to the trust and the claim for attorneys' fees beyond that is denied.

The Bank contends that the judge committed "plain error" in "failing to approve the accounting submitted by the trustee" because "there was no opposition to the accounting." It asserts that the decision should be reversed and urges that the second intermediate accounting should be approved. We disagree.

In fact, there was opposition to approval of the Bank's accounting request, specifically to the "attorneys' fee component" of the second interim accounting, which was "an integral part of the accounting itself." Even the Bank acknowledges this in these passages from its appellate brief:

The defendant, Geoffrey Mears, filed opposition to the motion. His opposition to the accounting did not object to the accounting, except that the attorneys' fees should not be payable from the trust.

\* \* \*

Fleet moved on June 25, 1999, for approval of an accounting for the period April 25, 1998 to June 10, 1999. . . . Counsel for Geoffrey Mears opposed the motion, not the accounting, but only the portion of the motion dealing with approval of attorneys' fees to be paid from the trust.

We thus reject as contrary to fact the Bank's contention that the judge committed plain error in failing to approve its second interim accounting because there was no opposition to that accounting.

## II

When we consider on appeal the Chancery Division's denial of a trustee's application to charge its attorneys' fees against the trust estate, we conduct our review, as did Judge Goldmann in

*Bush v. Riker,* 77 *N.J.Super.* 243, 248, 186 *A.*2d 117 (App.Div. 1962), pursuant to the abuse of discretion standard. We find no abuse of discretion by the Chancery Division here insofar as its ruling pertained to fees for the litigation.

■ As we understand the court's decision, it did not conclude that engaging in litigation could never be part of administration of the trust estate. Rather, it concluded that incurring "extensive legal fees in a case" that was "not the trust's problem" could not be used to justify a determination "that the trust should bear fees of the Bank pursuant to the provision of the trust instrument" authorizing the Bank to employ attorneys "for the administration of the trust estate." Thus, there is not an issue of fact as to whether the Trust Agreement authorizes the trustee to retain litigation counsel, who may be paid out of the trust estate. There was no question that such authority existed under appropriate circumstances. But there was a question whether, under the circumstances presented, it would be an appropriate exercise of the court's discretion to authorize such a payment.

■ Trustees are "entitled to the advice and help of counsel in the performance of their duties." *Gardner v. Baldi,* 24 *N.J.Super.* 228, 232, 93 *A.*2d 644 (Ch.Div.1952), but a trustee has "no right to subject the trust fund unnecessarily to charges for counsel and attorney's fees." *Holcombe v. Executors of Holcombe,* 13 *N.J. Eq.* 413, 415 (Ch. 1861). *See* generally, Austin W. Scott, *III Scott on Trusts* § 188.4 (3d ed.1967).

Here, the court noted that it was "clear from the complaint and the amendments to it that defendant Fleet Bank was brought into the matter because obviously it is the party who would ultimately have to be directed by the Court to do one thing or the other in light of the allegations that have been raised." Finally, the court observed that on March 25, 1998, the Bank notified the court and the other parties that it was "taking no position with respect to the control dispute," that is, whether defendant and the trust beneficiary "was incompetent, or was being unduly influenced."

Accordingly, because the Bank had "identified the issue and indicated to the court at the early stage of the case ... that it would stand by the sidelines and await further direction as to what should happen once these issues were resolved," the court found that should have been the "end of Fleet Bank's serious involvement in this case." "Despite that," the court found, the Bank, "during the life of this case thereafter," had incurred "extensive legal fees in a case where it essentially should have been sitting on the sidelines waiting for the smoke to clear from the dispute between the younger and elder Mr. Mears." To the judge, it was "unreasonable" for the Bank to incur "possibly close to $20,000 in fees when its expressed intent at the ... [outset] of the case ... was to merely ... await the outcome of the disputes between father and son." The court stated that it was "not satisfied, in light of the fee that is sought, that any fee should be awarded," and it determined that the "fees of the law firm have to be borne by Fleet Bank." It does not escape us that the trustee was seeking to persuade the court to exercise its discretion favorably despite the court's knowledge that "contrary to prior order, Fleet Bank already helped itself to the payment of a portion of those fees."

The Bank also asserts that the "attorneys' fees sought were reasonable" and, therefore, it contends that the "determination that the fees sought were unreasonable is a manifest abuse of ... discretion." The court made no such determination. Instead, it held that it was "not satisfied, in light of the fee that is sought, that any fee should be awarded." As we view the record, the court did not specifically reach the question of whether the "trustee's attorneys' fees were reasonable," because it had decided that the Bank "should bear its own fees." On the particular facts of this case, we find no abuse of discretion in the court's denial of fees concerning the litigation and affirm that part of its order.

## III

The court commented that the Bank had, "during the life of this case ..., incurred approximately nineteen or $20,000 worth of

counsel fees." The court assumed that the total amount of $19,067.43 in "Administrative Expenses Chargeable to Principal" stated in Schedule C of the second interim accounting was the total amount of "attorneys' fees." In fact, $2,904.74 of the $19,067.43 was trustee's commissions and $16,162.69 was attorneys' fees.

Because the court erred in ordering the Bank to return $2,904.74 attributable to the Bank's claim for trustee's commissions, we vacate that portion of the court's order and remand to the Chancery Division for a determination of what, if any, commissions are properly allowable to the Bank.

## IV

The Bank further asserts that a "trustee is entitled to have an attorney assist it in bringing accountings before the court," and, therefore, contends that the judge erred in failing to allow "its attorneys' fees" associated with "bringing the accountings . . . before the court" to be "paid from the trust."

The "usual rule" is one denying payment from the trust for "fees to bookkeepers or lawyers for keeping trustee's books or for preparing an account," because such services are the "responsibility of the fiduciary." *In re Trust of Brown,* 213 *N.J.Super.* 489, 494, 517 *A.*2d 893 (Law Div.1986). Consequently, "a law firm representing a corporate fiduciary" (as is the case here) "cannot be paid for estate *accounting* services" from the trust, "unless payment is charged against the fiduciary's commissions, *i.e.,* paid by the fiduciary." *Ibid. See In re Wharton,* 47 *N.J.Super.* 42, 46, 135 *A.*2d 187 (App.Div.1957).

A determination is thus required as to whether some of the Bank's legal services in connection with the accountings are fairly chargeable to the trust under the foregoing principles. The court found that the "fees of the law firm will have to be borne by Fleet Bank" because its attorneys were "not administering the estate, but . . . merely monitoring this litigation." But it acknowledged

that some portion of the fees of the Bank's law firm must have been associated with legal services entailed in bringing the Bank's two interim trust accountings before the court for its approval, which in appropriate circumstances may be awardable as counsel fees out of the trust. Unfortunately, there was no determination as to the specific amount that was allocable to such work.

If we could resolve this aspect of the dispute here and now we would do so, but we note that with respect to a similar issue, when it confronted the court in *In re Wharton, supra*, 47 *N.J.Super.* at 47–48, 135 *A.*2d 187, Judge Goldmann, writing for himself and for Judges Conford and Freund, stated:

> We are, of course, aware ... that we may exercise original jurisdiction under *R.R.* 1:5-4(a), and that it would not only be worthwhile but desirable for us to make findings of fact and adjudicate the merits of the appeal, thereby saving additional costs to the trust. However, we have no satisfactory factual basis to go on; there are too many voids which require further testimony or affidavits. In the *Bloomer* case the County Court, upon our remand, made specific findings and determined the exact basis for the award of counsel fees. This provided us, upon a second review of the propriety of the award, with a sound basis upon which to decide the case. *In re Bloomer's Estate*, 43 *N.J.Super.* 414, 129 *A.*2d 35 (App.Div.1957).

> These proceedings must therefore be remanded, with the direction that the County Court fully rehear the application for counsel fees, to the end that appropriate findings and an award thereon be entered.

We follow the same course for the same reasons. Accordingly, we vacate so much of the order appealed from as denied said attorneys' fees for work not attributable to the litigation and we remand to the Chancery Division for a determination as to whether any attorneys' fees of the Bank not so attributable should be paid by the Trust and, if so, the amount thereof.

V

We are satisfied that, except as to the issues of trustees' commissions and of attorneys' fees unrelated to the litigation, the court's reasons for its decision were sound and appropriate, and did not represent an abuse of discretion, and accordingly we affirm substantially for those reasons.

In summary, we vacate so much of the order appealed from as denied trustee's commissions and denied an attorneys' fee for work unconnected with this litigation. We remand this matter to the Chancery Division for further proceedings not inconsistent with this opinion to determine whether any amounts for such commissions and fees should be awarded to the Bank for payment out of the Trust, and if so, what amounts. We affirm all other aspects of the order. We do not retain jurisdiction.